Filed: 2/9/2015 5:30:31 PM
David R. Lloyd, District Clerk
Johnson County, Texas
By: Tracy Barber, Deputy

CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY)*: DC-C201500099    18TH    COURT *(FOR CLERK USE ONLY)*: _____

STYLED BOBBY PRICE V. ALTERRA EXCESS & SURPLUS INSURANCE COMPANY; FIRST INSURANCE; ET AL
_____
*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name: SEAN BREEN   Email: sbreen@howrybreen.com | Plaintiff(s)/Petitioner(s): BOBBY PRICE | ☒Attorney for Plaintiff/Petitioner <br> ☐*Pro Se* Plaintiff/Petitioner <br> ☐Title IV-D Agency <br> ☐Other: |
| Address: 1900 PEARL STREET   Telephone: 512-474-7300 | _____ | Additional Parties in Child Support Case: |
| City/State/Zip: AUSTIN, TX 78705   Fax: 512-474-8557 | Defendant(s)/Respondent(s): Alterra Excess & Surplus Insurance Company; First Insurance; (see attached) | Custodial Parent: <br> Non-Custodial Parent: <br> Presumed Father: |
| Signature: [signature]   State Bar No: 00783715 | [Attach additional page as necessary to list all parties] | |

## 2. Indicate case type, or identify the most important issue in the case (select only 1):

### Civil

**Contract**

*Debt/Contract*
- ☐Consumer/DTPA
- ☐Debt/Contract
- ☐Fraud/Misrepresentation
- ☐Other Debt/Contract:

*Foreclosure*
- ☐Home Equity—Expedited
- ☐Other Foreclosure
- ☐Franchise
- ☒Insurance
- ☐Landlord/Tenant
- ☐Non-Competition
- ☐Partnership
- ☐Other Contract:

**Injury or Damage**
- ☐Assault/Battery
- ☐Construction
- ☐Defamation
*Malpractice*
- ☐Accounting
- ☐Legal
- ☐Medical
- ☐Other Professional Liability:
- ☐Motor Vehicle Accident
- ☐Premises
*Product Liability*
- ☐Asbestos/Silica
- ☐Other Product Liability List Product:
- ☐Other Injury or Damage:

**Real Property**
- ☐Eminent Domain/ Condemnation
- ☐Partition
- ☐Quiet Title
- ☐Trespass to Try Title
- ☐Other Property:

**Related to Criminal Matters**
- ☐Expunction
- ☐Judgment Nisi
- ☐Non-Disclosure
- ☐Seizure/Forfeiture
- ☐Writ of Habeas Corpus— Pre-indictment
- ☐Other:

### Family Law

**Marriage Relationship**
- ☐Annulment
- ☐Declare Marriage Void
*Divorce*
- ☐With Children
- ☐No Children

**Other Family Law**
- ☐Enforce Foreign Judgment
- ☐Habeas Corpus
- ☐Name Change
- ☐Protective Order
- ☐Removal of Disabilities of Minority
- ☐Other:

**Post-judgment Actions (non-Title IV-D)**
- ☐Enforcement
- ☐Modification—Custody
- ☐Modification—Other

**Title IV-D**
- ☐Enforcement/Modification
- ☐Paternity
- ☐Reciprocals (UIFSA)
- ☐Support Order

**Parent-Child Relationship**
- ☐Adoption/Adoption with Termination
- ☐Child Protection
- ☐Child Support
- ☐Custody or Visitation
- ☐Gestational Parenting
- ☐Grandparent Access
- ☐Parentage/Paternity
- ☐Termination of Parental Rights
- ☐Other Parent-Child:

**Employment**
- ☐Discrimination
- ☐Retaliation
- ☐Termination
- ☐Workers' Compensation
- ☐Other Employment:

**Other Civil**
- ☐Administrative Appeal
- ☐Antitrust/Unfair Competition
- ☐Code Violations
- ☐Foreign Judgment
- ☐Intellectual Property
- ☐Lawyer Discipline
- ☐Perpetuate Testimony
- ☐Securities/Stock
- ☐Tortious Interference
- ☐Other:

**Tax**
- ☐Tax Appraisal
- ☐Tax Delinquency
- ☐Other Tax

**Probate & Mental Health**

*Probate/Wills/Intestate Administration*
- ☐Dependent Administration
- ☐Independent Administration
- ☐Other Estate Proceedings
- ☐Guardianship—Adult
- ☐Guardianship—Minor
- ☐Mental Health
- ☐Other:

## 3. Indicate procedure or remedy, if applicable (may select more than 1):

- ☐Appeal from Municipal or Justice Court
- ☐Arbitration-related
- ☐Attachment
- ☐Bill of Review
- ☐Certiorari
- ☐Class Action
- ☐Declaratory Judgment
- ☐Garnishment
- ☐Interpleader
- ☐License
- ☐Mandamus
- ☐Post-judgment
- ☐Prejudgment Remedy
- ☐Protective Order
- ☐Receiver
- ☐Sequestration
- ☐Temporary Restraining Order/Injunction
- ☐Turnover

## 4. Indicate damages sought (do not select if it is a family law case):

- ☐Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
- ☐Less than $100,000 and non-monetary relief
- ☐Over $100, 000 but not more than $200,000
- ☒Over $200,000 but not more than $1,000,000
- ☐Over $1,000,000

Rev 2/13

# EXHIBIT C

BOBBY PRICE V. ALTERA EXCESS & SURPLUS INSURANCE COMPANY, ET AL

ADDITIONAL DEFENDANTS:

First Antlers Bancorporation, Inc.

Midlands Management of Texas, Inc.

Risk Placement Services, Inc.

CAUSE NO. DC-C201500099

| | | |
|---|---|---|
| BOBBY PRICE, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| ALTERRA EXCESS & SURPLUS | § | OF JOHNSON COUNTY, TEXAS |
| INSURANCE COMPANY; FIRST | § | |
| INSURANCE; FIRST ANTLERS | § | |
| BANCORPORATION, INC.; MIDLANDS | § | |
| MANAGEMENT OF TEXAS, INC.; and | § | |
| RISK PLACEMENT SERVICES, INC., | § | |
| | § | |
| *Defendants.* | § | 18TH ___TH JUDICIAL DISTRICT |

---

## PLAINTIFF'S ORIGINAL PETITION, REQUESTS
## FOR DISCLOSURE, AND JURY DEMAND

---

Plaintiff Bobby Price files this Original Petition, Requests for Disclosure, and Jury Demand, complaining of Defendants Alterra Excess & Surplus Insurance Company (Alterra), First Insurance, First Antlers Bancorporation, Inc. (FirstBank), Midlands Management of Texas, Inc. (Midlands), and Risk Placement Services, Inc. (RPS), and for cause of action would respectfully show as follows:

### I.      INTRODUCTION

1.      Plaintiff Bobby Price, and his company Texas Transco, Inc. (Texas Transco), retained Defendants First Insurance/FirstBank in 2010 to help them find insurance to cover, among other things, potential loss to a drilling rig worth millions of dollars that was stacked and idle at Texas Transco's Grandview, Texas location.

2.      First Insurance/FirstBank in turn enlisted Defendants Midlands and RPS to find an appropriate insurer that could offer the terms Mr. Price and Texas Transco desired.   First

Insurance/FirstBank, Midlands, and RPS presented a quote for insurance coverage from Defendant Alterra in late 2010, which Mr. Price and Texas Transco accepted.

3.     When the theft of hundreds of thousands of dollars of materials and equipment from the drilling rig was discovered in November 2012, Mr. Price and Texas Transco timely and properly submitted a notice of claim to Alterra.  Their claim was rejected in February 2013.

4.     Alterra has cited an obscure qualification on its coverage as the basis for denial: that the drilling rig is only covered when it is stacked and idle at Texas Transco's Cresson, Texas location.  The problem is, Mr. Price and Texas Transco have **_never_** stated the drilling rig was located in Cresson.

5.     Every defendant is pointing fingers at the others: Alterra is citing the plain language of its policy, RPS and Midlands are pointing to allegedly confusing e-mails from First Insurance/FirstBank about the location of the drilling rig, and First Insurance/FirstBank is pointing to the insurance applications it submitted to Midlands that listed the drilling rig's location in Grandview.

6.     The only parties who have been assigned no blame whatsoever are Mr. Price and Texas Transco.  Incidentally, they are also the only ones who were left holding the bag when they desperately needed help.

7.     Together, Defendants collected more than $100,000 in premiums or commissions from Texas Transco, and all are denying any responsibility whatsoever.  Only one of two things could have occurred: (1) Alterra breached its contract of insurance or (2) First Insurance/FirstBank, Midlands, and/or RPS negligently failed to obtain the insurance Mr. Price and Texas Transco requested.  Mr. Price brings this suit to stop the finger-pointing and hold the proper defendant(s) accountable, whoever that may be.

## II.   PARTIES

8.      Plaintiff Bobby Price is an individual.  He resides in Wood County, Texas.

9.      Defendant Alterra Excess & Surplus Insurance Company is a foreign insurance carrier authorized to conduct business in Texas and, upon information and belief, is organized and existing under the laws of the State of Delaware.  According to the insurance policy in question, Alterra's principal place of business is in Richmond, Virginia.  Alterra may be served with process by serving the Texas Commissioner of Insurance, at 333 Guadalupe Street, Austin, Texas 78701, as its agent for service of process because Alterra is required by Section 804.103(b) of the Texas Insurance Code to appoint and maintain an agent for service of process, but either (i) Alterra has failed to do so or (ii) Alterra's agent for service cannot with reasonable diligence be found.  In the insurance policy in question, Alterra has requested that process or a true copy thereof be mailed to Stephen M. Loderick, 9020 Stony Point Parkway, Suite 325, Richmond, Virginia 23235.

10.     Defendant First Insurance is an Oklahoma corporation.  Upon information and belief, First Insurance does not maintain a regular place of business in Texas and has not designated an agent for service of process for causes of action arising out of First Insurance's business activities in Texas.  Because First Insurance does business in the State of Texas and has not designated an agent for service of process, First Insurance maybe served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Travis County, Texas 78701, as its agent for service.[1]  The Texas Secretary of State is requested to forward a copy of process with this Original Petition and Requests for Disclosure to First Insurance, through its registered agent for service of process in its home jurisdiction of Oklahoma: Heather Burrage, 113 North Washington, Suite 100, Durant, Oklahoma 74702.

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.044.

11.     Defendant First Antlers Bancorporation, Inc., is an Oklahoma corporation.  Upon information and belief, FirstBank does not maintain a regular place of business in Texas and has not designated an agent for service of process for causes of action arising out of First Insurance's business activities in Texas.  Because First Insurance does business in the State of Texas and has not designated an agent for service of process, First Insurance maybe served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Travis County, Texas 78701, as its agent for service.[2]  The Texas Secretary of State is requested to forward a copy of process with this Original Petition and Requests for Disclosure to First Insurance, through its registered agent for service of process in its home jurisdiction of Oklahoma: Steve Burrage, 100 North High Street, Antlers, Oklahoma 74523.

12.     Defendant Midlands Management of Texas, Inc., is a Texas corporation with its principal place of business at 3817 Northwest Expressway, Suite 1000, Oklahoma City, Oklahoma 73112.  Midlands may be served with process through service upon its registered agent for service of process, James M. Caldwell, 5050 Quorum Drive, Suite 400, Dallas Texas 75254.

13.     Defendant Risk Placement Services, Inc., is an Illinois corporation with its principal place of business at Two Pierce Place, Itasca, Illinois 60143-3141.  RPS may be served with process through service upon its registered agent for service of process, Corporation Service Company d/b/a CSC – Lawyers Incorporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

### III.    JURISDICTION AND VENUE

14.     This Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's jurisdictional requirements.  Further, and as required by Rule 47(c) of the

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.044.

Texas Rules of Civil Procedure, Mr. Price states he is seeking monetary relief over $200,000 but not more than $1 million.

15.     This Court has general personal jurisdiction over each defendant because they reside in the State of Texas, maintain places of business in the State of Texas, and/or have continuous and systematic contacts with the State of Texas.

16.     In the alternative, this Court also has specific personal jurisdiction over each defendant because Mr. Price's claims against each of them arise from and are directly related to actions each defendant took in the State of Texas.  Specifically, Alterra, through the insurance policy in question, has agreed to make a general appearance in a Texas court for actions arising out of that policy.  Both FirstBank and RPS conducted business with Texas residents regarding an insurance policy that was obtained to provide coverage to a Texas company that was operating in Texas and with assets located in Texas.

17.     Venue is proper in Johnson County, Texas, under Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code because all or a substantial part of the events or omissions giving rise to Mr. Price's claims occurred in Johnson County.  Specifically:

- Texas Transco's business operations during the events in question were located in Johnson County;

- The information provided by Mr. Price and Texas Transco on their commercial insurance application—which was passed to and reviewed by each defendant—was gathered and composed at Texas Transco's offices in Johnson County;

- All communications or negotiations between Texas Transco and any defendant originated in Johnson County; and

- The yard where the drilling rig in question was erroneously listed is in Johnson County; and

- The construction yard where the drilling rig in question was actually located is in Johnson County.

18.     Where venue is proper against one defendant, venue is proper against any other defendant for claims arising out of the same transaction, occurrence, or series of transactions or occurrences.[3]  Venue is therefore proper in Johnson County as to all defendants.

19.     This suit is not eligible for removal to federal court under 28 U.S.C. § 1441 and 28 U.S.C. § 1332 based on diversity jurisdiction because both Mr. Price and Midlands are citizens of Texas.[4]

## IV.    BACKGROUND

20.     Texas Transco is an oil and gas services company that provides vacuum services for drilling operations.  Before he sold his controlling interest in April 2014, Mr. Price was the sole owner and CEO of Texas Transco.

21.     The bulk of Texas Transco's business was the collection and disposal of liquids used while drilling oil and gas wells, primarily brine water and drilling mud.  Texas Transco has operations in towns across Texas, including Cresson, Texas, and Grandview, Texas.  At the time of the events described, Texas Transco owned and operate more than 100 trucks for its vacuum services, in addition to miscellaneous heavy equipment like bulldozers, trackhoes, and tractors.

22.     Texas Transco also owned an Emsco drilling rig comprised of a large derrick, drilling line, engines, pumps, tanks, and other equipment (the Drilling Rig).  This large combination of equipment was located in Texas Transco's Grandview yard, but was not actively being used for drilling operations.  Even idle, it was worth millions of dollars.

---

[3] *See* Tex. Civ. Prac. & Rem. Code § 15.005.

[4] *See* 28 U.S.C. § 1441(b)(2).

**A.     Texas Transco and Mr. Price moved their commercial insurance policy to Alterra.**

23.     For the 2010–2011 policy period, Mr. Price and Texas Transco investigated moving their insurance account to a new insurance carrier.  Mr. Price and Texas Transco enlisted First Insurance/FirstBank as their insurance agent to assist them in identifying appropriate carriers and the most favorable premiums.  (It is unclear whether the personnel who assisted Mr. Price and Texas Transco were employed by First Insurance, FirstBank, or both.)

24.     This process is known as "placing the risk": (i) matching companies or individuals seeking insurance with (ii) insurance carriers that will issue appropriate insurance policies at prices the potential insured is willing to accept.

25.     To find an appropriate insurance policy for Mr. Price's and Texas Transco's needs at a competitive price, First Insurance/FirstBank in turn requested assistance from Midlands, which requested assistance from RPS.  Upon information and belief, the efforts of First Insurance/FirstBank, Midlands, and RPS placed Mr. Price's and Texas Transco's risk with Alterra.

26.     A diagram of the parties' relationships is included below:



27.     Mr. Price and Texas Transco submitted their commercial insurance application on October 14, 2010, a copy of which is attached to this original petition as Exhibit A.  (Both Mr.

Price and Texas Transco were listed as named insureds on that initial application and on the insurance policy in question.)

28.     In that application, Mr. Price and Texas Transco identified the assets they wanted their new insurance policy to cover, including the Drilling Rig. In an attachment describing details about property owned by Texas Transco, the location of the Drilling Rig is 12000 South Highway 35W in Grandview, Texas.[5]

29.     Based on their needs, Mr. Price and Texas Transco were placed with Alterra, which agreed to bind coverage for a quoted premium. Mr. Price and Texas Transco accepted and coverage with Alterra was bound in or around December 2010. As is common in the commercial insurance industry, Alterra's coverage became effective on December 1, 2010 (the beginning of the policy period) even though a completed copy of the actual insurance policy had not yet been issued.

**B.     Alterra's 2010–2011 insurance policy inexplicably lists the wrong location for the Drilling Rig.**

30.     A complete copy of Alterra's insurance policy for Texas Transco and Mr. Price for the 2010–2011 policy year was issued on January 12, 2011. But in between the October 14, 2010 commercial insurance application and when the policy was issued, a strange thing happened: the coverage for the Drilling Rig described in the actual policy itself only applied while the Drilling Rig was stacked and idle at Texas Transco's ***Cresson*** location, not the ***Grandview*** location.[6]

31.     This error occurred despite the fact that Texas Transco and Mr. Price's October 14, 2010 commercial insurance application ***specifically listed*** the Drilling Rig's location in Grandview, Texas.

---

[5] *See* Ex. A (Oct. 14, 2010 application), at 24.

[6] *See* 2010–2011 policy, at 36, attached as Exhibit B.

32.     As of January 12, 2011, Mr. Price is not aware of any communications or writings that informed or directed any defendant to list Cresson, Texas, as the location of the idle Drilling Rig, and is not aware of any explanation as to why the Drilling Rig's location was incorrectly listed as Cresson, Texas, in the 2010–2011 insurance policy.

**C.     The error regarding the Drilling Rig's location is confirmed by First Insurance/FirstBank and included again in the 2011–2012 insurance policy.**

33.     On November 10, 2011, during renewal discussions for the Alterra insurance policy, an employee of Alterra stated (incorrectly) to an employee of RPS that the Drilling Rig was located in Cresson and asked if it would remain inoperative for the year.[7]  Apparently, RPS passed this question back to Midlands, which in turn sent the question to First Insurance/FirstBank on November 11, 2011.[8]  The First Insurance/FirstBank employee responded on November 14, 2011: "[T]his is the same rig that is currently on the policy . . . it is still at the [C]resson location and will stay stacked."[9]  This incorrect information was passed back to Alterra on November 17, 2011.[10]

34.     Still in renewal discussions a week later, the same First Insurance/FirstBank employee who confirmed Alterra's incorrect understanding of the Drilling Rig's location sent a list of Texas Transco's assets to the same Midlands employee on November 21, 2011.[11]  Her e-mail contained a two-page attachment that, once again, clearly listed the Drilling Rig's location as Grandview, Texas.[12]

---

[7] E-mails between Alterra and RPS employees (Nov. 10–17, 2011), attached as Exhibit C.

[8] E-mails between First Insurance/FirstBank and Midlands employees (Nov. 11–14, 2011), attached as Exhibit D.

[9] Ex. D (First Insurance/FirstBank and Midlands Nov. 11–14 e-mails).

[10] Ex. C (Alterra and RPS e-mails).

[11] *See* E-mail from First Insurance/FirstBank to Midlands (Nov. 21, 2011), attached as Exhibit E.

[12] Ex. E (First Insurance/FirstBank and Midlands Nov. 21 e-mails).

35.     First Insurance/FirstBank's November 21, 2011 e-mail—which clearly lists the Drilling Rig's location as Grandview, Texas—was obviously ignored by Midlands, RPS, and Alterra.   The insurance policy in question—number MAXA5IM0047972, for policy period December 1, 2011, to December 1, 2012 (the Policy)[13]—was issued on December 13, 2011, and still incorrectly listed the Drilling Rig's location as Cresson, Texas.[14]

36.     Both Texas Transco and Mr. Price are listed as named insureds for the Policy.[15]

**D.     Thieves steal more than $700,000 of materials and equipment from the idle Drilling Rig in the Grandview yard.**

37.     On or about November 7, 2012, employees of Texas Transco realized thieves had been stealing metal drilling pipes, drilling collars, and other materials and equipment from the idle Drilling Rig.[16]   The theft was reported to the Johnson County sheriff's office on November 9, 2012,[17] and a property loss notice was filed with Alterra on November 21, 2012.[18]

**E.     Alterra denies the claim and Defendants start blaming each other.**

38.     Almost immediately, Alterra began maneuvering to deny the claim.   It raised questions about the Drilling Rig's location and issued a reservation of rights letter on November 27, 2012, citing the Drilling Rig's location in Grandview as a basis to deny Mr. Price's and Texas Transco's claim.[19]

---

[13] Alterra insurance policy (2011–2012), attached as Exhibit F.

[14] *See* Ex. F (Alterra policy), at 28.

[15] Ex. F (Alterra policy), at 2.

[16] *See* Police report (Nov. 9, 2012), at 1.

[17] Ex. G (Police report), at 1.

[18] *See* Property loss notice (Nov. 21, 2012), at 1, attached as Exhibit H.

[19] *See* Alterra's reservation-of-rights letter (Nov. 27, 2011), attached as Exhibit I.

39.     After evaluating the claim for approximately seven weeks, Alterra denied coverage on February 11, 2013.[20]   It cited as the basis for denial that the Policy specifically (and incorrectly) stated the Drilling Rig was only covered while stacked at the Cresson location.

40.     After the claim's denial, Mr. Price, Texas Transco, First Insurance/FirstBank, and Midlands pushed Alterra to reconsider.   Alterra dug in its heels and questioned RPS about representations made about the Drilling Rig's location during the renewal negotiations one year earlier in November 2011.   RPS effectively tried to remove itself from the entire situation and turned on Midlands, which turned on First Insurance/FirstBank.

41.     First Insurance/FirstBank offered a spirited defense of its erroneous statement in the November 14, 2011 e-mail that the Drilling Rig was stacked and idle at Texas Transco's Cresson, Texas yard.   But Alterra would not reconsider its position and refused to honor Mr. Price's and Texas Transco's claim.   Further negotiations throughout 2013 and 2014 were not successful.

**F.     Mr. Price sells Texas Transco and retains all rights to pursue recovery from Defendants.**

42.     In addition to his standing to pursue claims against all defendants as a named insured on the commercial insurance application and on the Policy, Mr. Price also possesses any rights Texas Transco may have against Defendants as well.

43.     Mr. Price sold his stock in Texas Transco in April 2014, but as a part of the sale, Mr. Price retained the right to pursue claims against Defendants for (i) the denial of his and Texas Transco's claim regarding the theft of materials and equipment from the Drilling Rig, and (ii) failing to obtain requested and proper insurance coverage.

---

[20] *See* Alterra letter denying coverage (Feb. 11, 2013), at 2, attached as Exhibit J.

44.     To the extent any defendant believes Texas Transco, and not Mr. Price, is the proper party to pursue redress for breach of the Policy or negligent failure to obtain insurance, Mr. Price now possesses Texas Transco's rights as well as his own.

## V.     CAUSES OF ACTION

### A.     Breach of Contract against Alterra

45.     Mr. Price incorporates the preceding paragraphs and the allegations they contain as if completely set forth herein.

46.     On or about December 13, 2011, Mr. Price, Texas Transco, Inc., and Alterra executed a valid and enforceable written contract, the Policy.  A copy of the Policy has been attached to this original petition as Exhibit F.

47.     The Policy's number is MAXA5IM0047972, and the policy period is December 1, 2011, to December 1, 2012.  The Policy requires Alterra, among other things, to pay Mr. Price or Texas Transco for a covered loss to the drilling rig.

48.     Mr. Price and Texas Transco performed their contractual obligations under and are not in breach of the Policy.

49.     Alterra, however, has materially breached the Policy.  Specifically, Alterra has wrongfully refused to issue payment on a timely and properly submitted claim for a covered loss to the Drilling Rig.

50.     Alterra's material breach has caused Mr. Price injury as described above.  These injuries include, but are not limited to, the uncompensated loss of hundreds of thousands of dollars in drilling equipment and materials.

51.     Mr. Price seeks reformation of the Policy.  Mr. Price, Texas Transco, and Alterra intended to insure the Drilling Rig where it was stacked and idle, but Mr. Price, Texas Transco,

and Alterra were all mistaken that the Policy stated the correct location of the Drilling Rig.  The Policy should be reformed to reflect the original agreement of the parties, which was to insure the Drilling Rig where it was stacked and idle—in Grandview, Texas.

52.     In the alternative, Mr. Price seeks unliquidated damages within the jurisdictional limits of this Court.

53.     <u>Attorney's fees</u>.  Mr. Price is entitled to recover reasonable attorney's fees under Section 38.001(8) of the Texas Civil Practice & Remedies Code because this suit is for breach of a written contract.  Mr. Price retained counsel, who presented his claim to Alterra.  Alterra did not tender the amount owed within 30 days of when the claim was presented.

**B.     Request for Declaratory Relief against Alterra**

54.     Mr. Price incorporates the preceding paragraphs and the allegations they contain as if completely set forth herein.

55.     A justiciable controversy now exists between Mr. Price and Alterra as to their respective rights, obligations, and status under the Policy.

56.     Pursuant to the Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practices & Remedies Code, Mr. Price requests that this Court and the trier of fact construe the Policy and the facts and circumstances surrounding the Policy, and that this Court then enter a declaration stating that:

    a.  Mr. Price and Alterra are proper parties to the Policy;

    b.  The Policy is a valid and enforceable contract;

    c.  Other than the Policy, no other enforceable agreements or contracts exist between Mr. Price and Alterra that would affect the outcome of the issues raised in this lawsuit;

    d.  Mr. Price, Texas Transco, and Alterra were all mistaken that the Policy correctly stated the location of the Drilling Rig;

    e.   Mr. Price performed his obligations under and is not in breach of the Policy;

    f.   Alterra materially breached, and is in material breach of, the Policy;

    g.   Alterra failed to cure and is in default of the Policy;

    h.   Mr. Price has suffered harm as a result of Alterra's material breach, including the uncompensated loss of Drilling Rig materials and equipment; and

    i.   Reformation of the Policy to reflect the Drilling Rig's actual and correct location in Grandview, Texas, is a proper and appropriate remedy based on the circumstances of this case.

57.     By granting the declaratory relief Mr. Price seeks, this Court will clarify an ongoing and continuing dispute as to the parties' rights, obligations, and status under the Policy.

58.     <u>Attorneys' fees</u>: Mr. Price has retained the law firm of HOWRY BREEN & HERMAN, LLP, to represent him in this action, and has agreed to pay the firm reasonable and necessary attorney's fees.  Under Section 37.009 of the Texas Civil Practice & Remedies Code, Mr. Price requests an award of its costs and reasonable and necessary attorney's fees as are equitable and just.

**C.**    **Negligence against First Insurance, FirstBank, Midlands, and RPS**

59.     Mr. Price incorporates the preceding paragraphs and the allegations they contain as if completely set forth herein.

60.     First Insurance, FirstBank, Midlands, and RPS owed a legal duty to Mr. Price to exercise reasonable diligence in obtaining insurance as requested, and to promptly inform Mr. Price if they were unable to do so.[21]  First Insurance, FirstBank, Midlands, and RPS were asked to obtain insurance to cover the Drilling Rig while it was stacked and idle in Grandview, Texas.

---

[21] *See, e.g.*, *Frazer v. Tex. Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 822 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

61.     First Insurance, FirstBank, Midlands, and RPS breached that duty to Mr. Price by obtaining insurance that did not cover the drilling rig while it was stacked at the Grandview, Texas construction yard, and failing to inform Mr. Price or Texas Transco that the rig was not covered by an insurance policy while stacked in Grandview.

62.     The employees of First Insurance, FirstBank, Midlands, and RPS who failed to obtain the insurance Mr. Price and Texas Transco requested and failed to inform them when they failed to do so were employees or authorized agents of each such defendant and were acting within the course and scope of their employment at the time those failures occurred.  First Insurance, FirstBank, Midlands, and RPS are therefore liable for the actions and omissions of their employees under a theory of *respondeat superior*.

63.     First Insurance's, FirstBank's, Midlands', and RPS's breach of their duties proximately caused injury to Mr. Price, which resulted in the damages listed and described above.

64.     Mr. Price seeks unliquidated damages within the jurisdictional limits of this Court.

D.      **Deceptive Insurance Practices against all defendants**

65.     Mr. Price is an individual.  All defendants are corporations (including, upon information and belief, First Insurance).

66.     Mr. Price gave all defendants written notice of his claim at least 60 days before filing suit, as required by Section 541.154 of the Texas Insurance Code.  All defendants were on written notice no later than April 2013 that Mr. Price and Texas Transco were unsatisfied with Defendants' actions and were contemplating legal action.

67.     In the alternative, and to the extent Defendants deny the effect or nature of Mr. Price's written notice, he was not required to provide Defendants with written notice of his claim

under Section 541.154(c) of the Texas Insurance Code because the statute of limitations was about to run.

68.     Defendants' acts or practices violated multiple provisions of the Texas Insurance Code, including, but not limited to: (i) misrepresentation of the Policy, in violation of Section 541.061; and (ii) unlawful deceptive trade practices, in violation of Section 541.151, including violations of Sections 17.46(b)(5), 17.46(b)(12), and 17.46(b)(24) of the Texas Business & Commerce Code.

69.     Defendants' acts or practices were a producing cause of injury to Mr. Price, which resulted in the following damages: he lost hundreds of thousands of dollars in materials and equipment due to the theft discovered in November 2012 and was not compensated through an insurance policy that should have covered that loss.

70.     Mr. Price seeks unliquidated damages within the jurisdictional limits of this Court.

71.     Additional damages.  Defendants acted knowingly, which entitles Mr. Price to recover treble damages under Section 541.152(b) of the Texas Insurance Code.

72.     Attorney's fees.  Mr. Price is entitled to recover his reasonable and necessary attorney's fees under Section 541.152(a)(1) of the Texas Insurance Code.

## VI.   CONDITIONS PRECEDENT

73.     All conditions precedent to Mr. Price's right to recover have occurred, have been fully performed, or have been waived.

## VII.   TOLLING OF LIMITATIONS

74.     Mr. Price specifically pleads and invokes the discovery rule and fraudulent concealment should any defendant attempt to argue any or all of Mr. Price's claims are barred by any statute of limitations.

## VIII.   REQUESTS FOR DISCLOSURE

75.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, all defendants are requested to disclose, within the time required by Rule 194.3, the information or material described in Rule 194.2.

## IX.   JURY DEMAND

76.     Mr. Price hereby demands a trial by jury.  The proper fee for a jury trial is being tendered with this original petition.

## X.   CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Bobby Price requests that Defendants be cited to appear and answer, and that upon final trial of this cause, Mr. Price has judgment against Defendants in the form of the following relief:

1. Equitable relief in the form of a declaration that states:

   a) Mr. Price and Alterra are proper parties to the Policy;

   b) The Policy is a valid and enforceable contract;

   c) Other than the Policy, no other enforceable agreements or contracts exist between Mr. Price and Alterra that would affect the outcome of the issues raised in this lawsuit;

   d) Mr. Price, Texas Transco, and Alterra were all mistaken that the Policy correctly stated the location of the Drilling Rig;

   e) Mr. Price performed his obligations under and is not in breach of the Policy;

   f) Alterra materially breached, and is in material breach of, the Policy;

   g) Alterra failed to cure and is in default of the Policy;

   h) Mr. Price has suffered harm as a result of Alterra's material breach, including the uncompensated loss of Drilling Rig materials and equipment; and

- 17 -

    i)    Reformation of the Policy to reflect the Drilling Rig's actual and correct location in Grandview, Texas, is a proper and appropriate remedy based on the circumstances of this case.

2.   Actual damages;

3.   Additional damages;

4.   Attorney's fees;

5.   Prejudgment and post-judgment interest at the highest rate permitted by law;

6.   Costs of court;

    and

7.   Any other and further relief, at law or in equity, to which Mr. Price is justly entitled.

Dated: February 9, 2015

Respectfully submitted,

HOWRY BREEN & HERMAN, L.L.P.

Sean E. Breen
State Bar No. 00783715
sbreen@howrybreen.com
James Hatchitt
State Bar No. 24072478
jhatchitt@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

*Attorneys for Plaintiff Bobby Price*

# ACORD

# EQUIPMENT FLOATER SECTION

DATE (MM/DD/YYYY)
10/14/2010

| AGENCY | | APPLICANT Texas Transco, Inc. |
|---|---|---|

PHONE
(A/C, No, Ext): (580) 238-4057
FAX
(A/C, No): (580) 298-3771

First Insurance
P. O. Box 458

Antlers          OK   74523

CODE:                    SUBCODE:

AGENCY CUSTOMER ID

| PROPOSED EFF. DATE | PROPOSED EXP. DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| 12/01/2010 | 12/01/2011 | AGENCY DIRECT | | |

FOR COMPANY USE ONLY

## TERRITORY OF OPERATION
See attached location list

## TYPE OF OPERATION
Oilfield operations (Drilling)
**Drilling Rig**

## COVERAGE/DEDUCTIBLE
See attached deductible schedule

## EQUIPMENT STORAGE

| LOC. # | MO. IN STORAGE | MAXIMUM VALUE | | TYPE OF SECURITY |
|---|---|---|---|---|
| | | IN BUILDING | OUTSIDE | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |

## UNSCHEDULED EQUIPMENT

| DESCRIPTION | MAXIMUM ITEM | AMT. OF INSURANCE | % COINS |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## ADDITIONAL INTEREST/CERTIFICATE RECIPIENTS        ACORD 45 Attached

| INTEREST | RANK: | NAME AND ADDRESS | REFERENCE #: | | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|---|---|
| LOSS PAYEE | | | | | | LOCATION:          BUILDING: |
| LIENHOLDER | | | | | | SCHEDULED ITEM NUMBER: |
| | | | | | | OTHER |
| | | ITEM DESCRIPTION: | | | | |

| INTEREST | RANK: | NAME AND ADDRESS | REFERENCE #: | | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|---|---|
| LOSS PAYEE | | | | | | LOCATION:          BUILDING: |
| LIENHOLDER | | | | | | SCHEDULED ITEM NUMBER: |
| | | | | | | OTHER |
| | | ITEM DESCRIPTION: | | | | |

| INTEREST | RANK: | NAME AND ADDRESS | REFERENCE #: | | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|---|---|
| LOSS PAYEE | | | | | | LOCATION:          BUILDING: |
| LIENHOLDER | | | | | | SCHEDULED ITEM NUMBER: |
| | | | | | | OTHER |
| | | ITEM DESCRIPTION: | | | | |

## GENERAL INFORMATION

EXPLAIN ALL "YES" RESPONSES

| | Y/N |
|---|---|
| 1.  EQUIPMENT RENTED, LOANED TO/FROM OTHERS WITH/WITHOUT OPERATORS? | N |
| 2.  IS APPLICANT OPERATING EQUIPMENT NOT LISTED HERE? | N |
| 3.  PROPERTY USED UNDERGROUND? | N |
| 4.  ANY WORK DONE AFLOAT? | N |

ACORD 146 (2007/02)
INS146 (200702)

Page 1 of 2

© ACORD CORPORATION 1988-2007.  All rights reserved.
The ACORD name and logo are registered marks of ACORD

EXHIBIT
A
tabbies

## SCHEDULED EQUIPMENT

| | | | | | | % COINSURANCE | |
|---|---|---|---|---|---|---|---|
| # | **TYPE** Drilling Rig | **DESCRIPTION** Oil & Gas Vac. Serv. Rig inc equ | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** EMSCO | **MODEL** G-45 Drill Rig | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $    4,500,000 | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |
| # | **TYPE** | **DESCRIPTION** | | **ID # / SERIAL NO.** | | **NEW / USED** | **DATE PURCHASED** |
| | **MANUFACTURER** | **MODEL** | | **MODEL YEAR** | **CAPACITY** | **AMOUNT OF INSURANCE** $ | |

ACORD 146 (2007/02)
INS146 (200702)

**ATTACH TO ACORD 125**

## Drilling Rig



## TEXAS TRANSCO, INC. DRILLING RIG

1-BETHLEHAM 320,000 LB TRIPLE JACKKNIFE DERRICK HAS NEW RACKING
BOARD WITH 5 SHEAVES, 1 1/8 INCH DRILLING LINE, 8 NEW OIL RESISTANT
LIGHTS IN DERRICK, 300 TON BLOCKS WITH BJ42 HOOKS.

2 – 6X6 PONY SUBS (40 FT LONG EACH), 2 - 6X6 MAIN TOP SUBS (40 FT LONG EACH)
WITH 4 FT WINGS, 2 CENTER PIECES, 40 GALLON AIR TANK, 80 GALLON AIR TANK,
NEW 4 INCH MUD LINE IN SUBSTRUCTURE.

1 - EMSCO G-42 DRAWWORKS SKID MOUNTED WITH NEW BRAKE FLANGES,
BRAKES AND ALL NEW DRAWWORK CHAINS.

2 - 3408 CATERPILLAR ENGINES WITH REBUILT TWIN DISK TORQUE CONVERTERS, 18 " AIR CLUTCHES, PARKERSBERG HYDROMATIC, 1 – 8'X10' MOTOR SHED.

1 - MAIN PUMP 18" GARDNEW DENVER KXG-172 DUPLEX MUD PUMP, SKID MOUNTED WITH BULL WHEEL, PULSATION DAMPNER, MATCO FLUID END, REBUILT (COMPOUND) PUMP.

1 - GARDNER DENVER KXG-172 DUPLEX MUD PUMP, SKID MOUNTED, MATCO FLUID END, POWERED BY 12V71 DETROIT ENGINE.

2 – 115 KW KOHLER LIGHT PLANTS POWERED BY DEUTZ DIESEL ENGINES,

1 - 8'X28' TOP DOG HOUSE WITH DRILLERGRAPH RECORDER, BEAR AUTO DRILLER, KNOWLEDGE BOX AND HEATER.

1 – 8'X28' BOTTOM DOG HOUSE - SKID MOUNTED WITH HEATER.

1 – 8'X25' PART HOUSE/ DOG HOUSE - SKID MOUNTED, WITH 5 COMPARTMENT OIL LUBSTER.

1 - WATER TANK - 36' LENGTH X 6' HEIGHT X 8' WIDE

2 – MUD TANKS 32' LONG X 6' HEIGHT X 8' WIDE

2 - SETS PIPE RACK

1 CAT WALK

1 – 60' NEW KELLY HOSE, 1 SET 9' BELLS, 1 – 38' KELLY WITH KELLY SHUCK, 1 ROLLER TYPE KELLY BUSHING.

1 - OCCUMALATOR – SERIAL NUMBER 1014-0, 1 - BLOWOUT PREVENTOR DOUBLER RAM SHAFER SERIAL NUMBER 134699.

6 - SETS OF STEPS, 1 - SET BJ TYPE B TONGS, 1 - JOY AIR HOIST, 1 - HYDRAULIC/ELECTRIC WIRELINE, 1 - MARTIN DECKER WEIGHT INDICATOR.

1 – 20" IDECO ROTARY TABLE

309 JOINTS 4'1/2" DRILL PIPE

17 SPIRAL 6" DRILL COLLARS.

# INSURED VALUE:  $4,500,000.00

# ACORD® EQUIPMENT FLOATER SECTION

| | DATE (MM/DD/YYYY) 10/14/2010 |
|---|---|

| AGENCY | PHONE (A/C, No, Ext): (580) 298-4057 FAX (A/C, No): (580) 298-3771 | APPLICANT Texas Transco, Inc. | | | | |
|---|---|---|---|---|---|---|
| First Insurance P. O. Box 458 Antlers    OK  74523 | | PROPOSED EFF. DATE | PROPOSED EXP. DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
| | | 12/01/2010 | 12/01/2011 | AGENCY DIRECT | | |
| CODE:              SUBCODE: AGENCY CUSTOMER ID | | FOR COMPANY USE ONLY | | | | |

## TERRITORY OF OPERATION
See attached location list

## TYPE OF OPERATION
Hauling brine water and drilling mud **EQUIPMENT**

## COVERAGE/DEDUCTIBLE
See attached deductible schedule.

## EQUIPMENT STORAGE

| Loc. # | NO. IN STORAGE | MAXIMUM VALUE | | TYPE OF SECURITY |
|---|---|---|---|---|
| | | IN BUILDING | OUTSIDE | |
| | | $ | $ | |
| | | $ | $ | |
| | | $ | $ | |

## UNSCHEDULED EQUIPMENT

| DESCRIPTION | MAXIMUM ITEM | AMT. OF INSURANCE | % COINS |
|---|---|---|---|
| | | | |

## ADDITIONAL INTEREST/CERTIFICATE RECIPIENTS      ACORD 45 Attached

| INTEREST | RANK: | NAME AND ADDRESS | REFERENCE #: | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|---|
| LOSS PAYEE LIENHOLDER | | | | | LOCATION:   BUILDING: SCHEDULED ITEM NUMBER: OTHER |
| | | ITEM DESCRIPTION: | | | |
| INTEREST LOSS PAYEE LIENHOLDER | RANK: | NAME AND ADDRESS | REFERENCE #: | CERTIFICATE REQUIRED | LOCATION:   BUILDING: SCHEDULED ITEM NUMBER: OTHER |
| | | ITEM DESCRIPTION: | | | |
| INTEREST LOSS PAYEE LIENHOLDER | RANK: | NAME AND ADDRESS | REFERENCE #: | CERTIFICATE REQUIRED | LOCATION:   BUILDING: SCHEDULED ITEM NUMBER: OTHER |
| | | ITEM DESCRIPTION: | | | |

## GENERAL INFORMATION

EXPLAIN ALL "YES" RESPONSES

| | | Y/N |
|---|---|---|
| 1 | EQUIPMENT RENTED, LOANED TO/FROM OTHERS WITH/WITHOUT OPERATORS? | N |
| 2. | IS APPLICANT OPERATING EQUIPMENT NOT LISTED HERE? | N |
| 3. | PROPERTY USED UNDERGROUND? | N |
| 4. | ANY WORK DONE AFLOAT? | N |

ACORD 146 (2007/02)          Page 1 of 2        © ACORD CORPORATION 1988-2007.  All rights reserved.
INS146 (200702)          The ACORD name and logo are registered marks of ACORD

## SCHEDULED EQUIPMENT

% COINSURANCE

| | | | | | | |
|---|---|---|---|---|---|---|
| # | TYPE | DESCRIPTION<br>See Attached Schedule | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |
| # | TYPE | DESCRIPTION | ID # / SERIAL NO. | | NEW / USED | DATE PURCHASED |
| | MANUFACTURER | MODEL | | MODEL YEAR | CAPACITY | AMOUNT OF INSURANCE<br>$ |

# ACORD™   OPEN CARGO SECTION

| | |
|---|---|
| DATE | 10/14/2010 |

| PRODUCER | APPLICANT (First Named Insured) Texas Transco, In c. |
|---|---|
| PHONE (A/C, No, Ext): (580) 238-4057 | P. O. Box 555 |
| FAX (A/C, No): (580) 298-3771 | |
| First Insurance | Cresson                    TX   76035 |
| P. O. Box 458 | |
| Antlers          OK   74523 | |

| EFFECTIVE DATE | EXPIRATION DATE | DIRECT BILL | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|
| 12/01/2010 | 12/01/2011 | AGENCY BILL | | |

| CODE: | SUB CODE: |
|---|---|
| AGENCY CUSTOMER ID | FOR COMPANY USE ONLY |

## INTEREST

**CONVEYANCE USED**

**APPLICANT IS**

- ☐ FREIGHT FORWARDER
- ☐ SHIPPER OF OWNED PROPERTY
- ☐ IMPORTER
- ☐ EXPORTER
- ☐ OTHER

## OPERATIONS

PROPERTY SHIPPED

POINTS OF ORIGIN

POINTS OF DESTINATION

## GENERAL INFORMATION

| AVERAGE VALUE | PACKING |
|---|---|
| $          PER | |
| ANNUAL GROSS SALES | COVERAGE FORM |
| $  8,000,000.00 | |

## COVERAGES

| COVERAGE TYPE | VALUATION | ANNUAL VALUES | LIMIT | PER | DED |
|---|---|---|---|---|---|
| INTERNATIONAL TRANSIT | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | $ | $ | | $ |
| | | $ | $ | | $ |

## ADDITIONAL COVERAGES

| RETURNED/REFUSED | FRAUDULENT B/L & RECEIPT | DUTY | BRANDS/LABELS | DIC |
|---|---|---|---|---|
| FOB SHIPMENTS | WAR | DEConSOLIDATION | PAIRS/SETS | OTHER |

## EXCLUSIONS

| MARRING, DENTING, CHIPPING & SCRATCHING | RUST | MECHANICAL/ELECTRICAL |
|---|---|---|
| BREAKAGE | DISCOLORATION & OXIDATION | OTHER |

## REMARKS

ACORD 193 (2001/02)

INS193 (0103)

© ACORD CORPORATION 2001

ELECTRONIC LASER FORMS, INC. - (800)327-0545

## Texas Transco, Inc.
## Frac Tank List
## October 15, 2010

| Frac Tank # | VIN Number | Year | Make | Value |
|---|---|---|---|---|
| 301 | 1T9TF42196I867760 | 2006 | TROXELL | $23,763.60 |
| 302 | 1C9CF45186W789602 | 2006 | CHANDLER | $23,763.60 |
| 303 | 1C9CF451X6W789603 | 2006 | CHANDLER | $23,763.60 |
| 304 | 1C9CF45116W789604 | 2006 | CHANDLER | $23,763.60 |
| 305 | 1C9CF45134W789605 | 2006 | CHANDLER | $23,763.60 |
| 306 | 1C9CF45156W789606 | 2006 | CHANDLER | $23,763.60 |
| 307 | 1T9TF42146I867763 | 2006 | TROXELL | $23,763.60 |
| 308 | 1T9TF42166I867764 | 2006 | TROXELL | $23,763.60 |
| 309 | 1C9CF45106W789609 | 2006 | CHANDLER | $23,763.60 |
| 310 | 1C9CF45176W789610 | 2006 | CHANDLER | $23,763.60 |
| 311 | 1C9CF45196W789611 | 2006 | DRAGON | $23,763.60 |
| 312 | 1C9CF45106W789612 | 2006 | CHANDLER | $23,763.60 |
| 313 | 1C9CF45126W789613 | 2006 | CHANDLER | $23,763.60 |
| 314 | 1C9CF45146W789614 | 2006 | CHANDLER | $23,763.60 |
| 315 | 1C9CF45166W789615 | 2006 | CHANDLER | $23,763.60 |
| 316 | 1T9TF42186I867765 | 2006 | TROXELL | $23,763.60 |
| 317 | 1T9TF421X6I867766 | 2006 | TROXELL | $23,763.60 |
| 318 | 1T9TF42116I867767 | 2006 | TROXELL | $23,763.60 |
| 319 | 1T9TF42136I867768 | 2006 | TROXELL | $23,763.60 |
| 320 | 1T9TF42156I867769 | 2006 | TROXELL | $23,763.60 |
| 321 | 1T9TF42116I867770 | 2006 | TROXELL | $23,763.60 |
| 322 | 1T9TF42136I867771 | 2006 | TROXELL | $23,940.14 |
| 323 | 1T9TF42156I867772 | 2006 | TROXELL | $23,940.14 |
| 324 | 1T9TF42176I867773 | 2006 | TROXELL | $23,940.14 |
| 325 | 1T9TF42196I867774 | 2006 | TROXELL | $20,712.60 |
| 326 | 1T9TF42106I867775 | 2006 | TROXELL | $20,712.60 |
| 327 | 1T9TF42126I867776 | 2006 | TROXELL | $20,712.60 |
| 328 | 1T9TF42146I867777 | 2006 | TROXELL | $20,712.60 |
| 329 | 1C9CF45186W789616 | 2006 | CHANDLER | $20,712.60 |
| 330 | 1W9SE40156B443005 | 2006 | WATERBOY | $17,720.95 |
| 331 | 1T9TF42166I867778 | 2006 | TROXELL | $20,766.00 |
| 332 | 1T9TF42186I867779 | 2006 | TROXELL | $20,766.00 |
| 333 | 1T9TF42146I867780 | 2006 | TROXELL | $20,766.00 |
| 334 | 1T9TF42166I867781 | 2006 | TROXELL | $20,766.00 |
| 335 | FT10060029 | 2006 | DECORATIVE | $18,975.00 |
| 336 | (100604-1) 1W9SE40156B443 | 2006 | WATERBOY | $17,720.95 |
| 337 | 1T9TF42167I867913 | 2007 | TROXELL | $20,766.00 |

1

## Texas Transco, Inc.
## Frac Tank List
## October 15, 2010

| Frac Tank # | VIN Number | Year | Make | Value |
|---|---|---|---|---|
| 338 | 1T9TF421671867914 | 2007 | TROXELL | $22,496.50 |
| 339 | 1T9TF421X71867915 | 2007 | TROXELL | $22,496.50 |
| 340 | 1T9TF42171867916 | 2007 | TROXELL | $22,496.50 |
| 341 | FT100600030 | 2006 | DECORATIVE | $18,975.00 |
| 342 | 1T9TF421871867007 | 2007 | TROXELL | $22,496.50 |
| 343 | (100601-2)1W9SE40156B443015 | 2006 | WATERBOY | $17,720.95 |
| 344 | 1T9TF421X71867008 | 2007 | TROXELL | $22,496.50 |
| 345 | FT100600031 | 2006 | DECORATIVE | $18,975.00 |
| 346 | 1T9TF421071867017 | 2007 | TROXELL | $22,490.00 |
| 347 | 1T9TF421171867026 | 2007 | TROXELL | $22,490.00 |
| 348 | 1T9TF421271867027 | 2007 | TROXELL | $22,490.00 |
| 349 | FT100600032 | 2006 | DECORATIVE | $18,975.00 |
| 350 | 1T9TF421071867051 | 2007 | TROXELL | $19,313.82 |
| 351 | 1T9TF421971867041 | 2007 | TROXELL | $22,490.00 |
| 352 | 1T9TF421471867067 | 2007 | TROXELL | $19,313.82 |
| 353 | 1T9TF421671867068 | 2007 | TROXELL | $19,313.82 |
| 354 | 1T9TF421371867058 | 2007 | TROXELL | $19,313.82 |
| 355 | 1T9TF421X71867073 | 2007 | TROXELL | $19,313.82 |
| 356 | 1T9TF421571867059 | 2007 | TROXELL | $19,313.82 |
| TOTAL | | | | $1,225,637.31 |

2

## Texas Transco, Inc.
## Additional Equipment on Inland Marine Policy

| Desciption | Location/serial Number | Limit | |
|---|---|---|---|
| (1) Triplex Pump | White Oak | $75,000 | |
| Additional Auxillary Equipment | White Oak | $175,000 | |
| (8) 400 BBL tanks @ $8K per tank | White Oak | $64,000 | |
| (1) 210 BBL tank @ $4K per tank | White Oak | $4,000 | |
| | **Total White Oak** | | **$318,000** |
| | | | |
| 10 tanks @ $19K per tank | Cresson | $190,000 | |
| (2) Gunbarrell Tanks @ $35K per tank | Cresson | $70,000 | |
| (2) Tanks @ $8K per tank | Cresson | $16,000 | |
| (4) pumps @ $125K per pump | Cresson | $500,000 | |
| Additional Auxillary Equipment | Cresson | $600,000 | |
| Control Panels for "Three Phase" from Power Company | Cresson | $100,000 | |
| Containment Wall concrete with plastic line | Cresson | $25,000 | |
| | **Total Cresson** | | **$1,501,000** |
| | | | |
| National Salt Water | 413 | $60,000 | |
| National 300Q 5M 250HP-1200RPM pumps and hoses | | $95,000 | |
| Trackhoe | A86354 | $60,000 | |
| | **Total Other** | | **$215,000** |

NEW! On-line Loss Runs now include paid losses and reserves

## EXTERNAL LOSS RUN REPORT

*Please note that loss runs now include paid losses and loss reserves.

We currently do not have online reports available for Garage or certain Excess and Umbrella policies

Loss Runs For:
SUMMARY for Insured Name:
Report Date:

U.S. Risk Underwriters, Inc.
TEXAS TRANSCO INC
9/30/2010

| Policy Number | Effective Date | Expiration Date | Claim Count | Total Paid Loss | Total Paid Expense | Total Loss Reserves |
|---|---|---|---|---|---|---|
| CF422200519 | 12/1/2009 | 12/1/2010 | 0 | $0 | $0 | $0 |
| Totals | Policy Count = 1 | | 0 | $0 | $0 | $0 |

AGENCY CUSTOMER ID: Texas Transco, Inc.

# ACORD® PROPERTY SECTION

DATE (MM/DD/YYYY)
10/14/2010

| AGENCY First Insurance | APPLICANT (First Named Insured) Texas Transco, Inc. | |
|---|---|---|
| POLICY NUMBER | CARRIER | NAIC CODE |

| EFFECTIVE DATE 12/01/2010 | EXPIRATION DATE 12/01/2011 | DIRECT BILL [X] AGENCY BILL | PAYMENT PLAN | AUDIT | FOR COMPANY USE ONLY | |
|---|---|---|---|---|---|---|

**PREMISES INFORMATION**

PREMISES #: 1   STREET ADDRESS: N. White Oak Road & Highway 2275, Winnsboro, TX
BUILDING #: 1   BLDG DESCRIPTION: Dispatch Office

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALU-ATION | CAUSES OF LOSS | INFLATION GUARD % | DED | BLKT # | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|---|
| Dispatch Office | 40,000 | 80 | RC | SPECIAL | | 1,000 | | $2500.00 Deductible for hail |
| | | | | | | | | |

ADDITIONAL INFORMATION | BUSINESS INCOME / EXTRA EXPENSE - Attach ACORD 810     VALUE REPORTING INFORMATION - Attach ACORD 811

**ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION**

| SPOILAGE COVERAGE (Y/N) | DESCRIPTION OF PROPERTY COVERED | LIMIT $ | DEDUCTIBLE $ | REFRIG MAINT AGREEMENT (Y/N) | OPTIONS |
|---|---|---|---|---|---|

# OF OPEN SIDES ON STRUCTURE:

| CONSTRUCTION TYPE Frame | DISTANCE TO HYDRANT FT 20 | FIRE STAT MI | FIRE DISTRICT/CODE NUMBER | PROT CL 10 | # STORIES | # BASMTS | YR BUILT 2005 | TOTAL AREA |
|---|---|---|---|---|---|---|---|---|

BUILDING IMPROVEMENTS
WIRING, YR:        PLUMBING, YR:
ROOFING, YR:       HEATING, YR:
OTHER:            YR:

| | BLDG CODE GRADE | TAX CODE | ROOF TYPE | OTHER OCCUPANCIES |
|---|---|---|---|---|
| WIND CLASS | SEMI - RESISTIVE | | HEATING BOILER ON PREMISES? (Y/N) | |
| | RESISTIVE | | IF YES, IS INSURANCE PLACED ELSEWHERE? (Y/N) | |

RIGHT EXPOSURE & DISTANCE      LEFT EXPOSURE & DISTANCE      FRONT EXPOSURE & DISTANCE      REAR EXPOSURE & DISTANCE

| BURGLAR ALARM TYPE | CERTIFICATE # | EXPIRATION DATE | CENTRAL STATION WITH KEYS |
|---|---|---|---|
| BURGLAR ALARM INSTALLED AND SERVICED BY | EXTENT    GRADE    # GUARDS/WATCHMEN | | CLOCK HOURLY |
| PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO2/Chemical Systems) | % SPRNK    FIRE ALARM MANUFACTURER | | CENTRAL STATION LOCAL GONG |

**ADDITIONAL INTERESTS**

| RANK: | NAME AND ADDRESS: | REFERENCE #: Texas Transco | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|
| INTEREST LOSS PAYEE [X] MORT-GAGEE | Community Bank P. O. Box 2100 Sulphur Springs      TX    75483 | | | LOCATION: 1   BUILDING: 1 |
| | ITEM DESCRIPTION: | | | SCHEDULED ITEM NUMBER: |
| | | | | OTHER: |

ACORD 140 (2007/09)
INS140 (200709)

ATTACH TO ACORD 125 © 1985-2007 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: Texas Transco, Inc.

**ADDITIONAL PREMISES INFORMATION**

| | PREMISES #: 2 | STREET ADDRESS: 13841 N. Highway 171, Cresson, TX | | | | | |
|---|---|---|---|---|---|---|---|
| | BUILDING #: 1 | BLDG DESCRIPTION: Shop/Office | | | | | |

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALU- ATION | CAUSES OF LOSS | INFLATION GUARD % | DED $ | BLKT $ | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|---|
| Shop/office | | | | Special | | | | $2,500 wind and hail deductible |
| | 207,952 | 80 | RC | | | 1,000 | | |
| Personal Property | | | | Special | | | | |
| | 150,000 | 80 | RC | | | 1,000 | | |

| ADDITIONAL INFORMATION | BUSINESS INCOME / EXTRA EXPENSE - Attach ACORD 810 | VALUE REPORTING INFORMATION - Attach ACORD 811 |
|---|---|---|

**ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION**

| SPOILAGE COVERAGE (Y/N) | DESCRIPTION OF PROPERTY COVERED | LIMIT $ | DEDUCTIBLE $ | REFRIG MAINT AGREEMENT (Y/N) | OPTIONS |
|---|---|---|---|---|---|
| | | | | | |

# OF OPEN SIDES ON STRUCTURE: ____

| CONSTRUCTION TYPE | DISTANCE TO HYDRANT FT  FIRE STAT MI | FIRE DISTRICT/CODE NUMBER | PROT CL | # STORIES | # BSMNTS | YR BUILT | TOTAL AREA |
|---|---|---|---|---|---|---|---|
| Non Combustable | | | 9 | | | 2005 | |

| BUILDING IMPROVEMENTS | | BLDG CODE GRADE | TAX CODE | ROOF TYPE | OTHER OCCUPANCIES |
|---|---|---|---|---|---|
| WIRING, YR: | PLUMBING, YR: | | | | |
| ROOFING, YR: | HEATING, YR. | WIND CLASS | SEMI-RESISTIVE | HEATING BOILER ON PREMISES? (Y/N) |
| OTHER: YR: | RESISTIVE | | IF YES, IS INSURANCE PLACED ELSEWHERE? (Y/N) |

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | FRONT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |
|---|---|---|---|

| BURGLAR ALARM TYPE | CERTIFICATE # | | | EXPIRATION DATE | CENTRAL STATION WITH KEYS |
|---|---|---|---|---|---|
| BURGLAR ALARM INSTALLED AND SERVICED BY | | EXTENT | GRADE | # GUARDS/WATCHMEN | CLOCK HOURLY |
| PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO2/Chemical Systems) | % SPRNK | FIRE ALARM MANUFACTURER | | | CENTRAL STATION LOCAL GONG |

**ADDITIONAL INTERESTS**

| RANK: | NAME AND ADDRESS: | REFERENCE #: | | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|---|
| INTEREST | | | | | LOCATION:  BUILDING: |
| LOSS PAYEE MORT- GAGEE | | | | | SCHEDULED ITEM NUMBER: |
| | ITEM DESCRIPTION: | | | | |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND (NY: SUBSTANTIAL) CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR or VT; In DC, LA, ME, TN, VA and WA, insurance benefits may also be denied)

IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

IN MASSACHUSETTS, NEBRASKA, OREGON AND VERMONT, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND MAY SUBJECT THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

ACORD 140 (2007/09)
INS140 (200709)

Page 2 of 2

AGENCY CUSTOMER ID: Texas Transco, Inc. (Prop. 2)

# ACORD

# PROPERTY SECTION

DATE (MM/DD/YYYY)
10/14/2010

| AGENCY First Insurance | APPLICANT (First Named Insured) Texas Transco, Inc. |
|---|---|

| POLICY NUMBER | CARRIER | NAIC CODE |
|---|---|---|

| EFFECTIVE DATE 12/01/2010 | EXPIRATION DATE 12/01/2011 | DIRECT BILL AGENCY BILL | PAYMENT PLAN | AUDIT | FOR COMPANY USE ONLY |
|---|---|---|---|---|---|

**PREMISES INFORMATION**  PREMISES #: 2  STREET ADDRESS: 1381 N. Hwy 171, Cresson, TX
BUILDING #: 2  BLDG DESCRIPTION: Dispatch Office

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALU-ATION | CAUSES OF LOSS | INFLATION GUARD % | DED | BLKT # | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|---|
| Dispatch Office | | | | Special | | | | 2,500 for wind and hail |
| | 121,743 | 80 | RC | | | 1,000 | | |
| Business Property | | | | Special | | | | 2,500 for wind and hail |
| | 25,000 | 80 | RC | | | 1,000 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| ADDITIONAL INFORMATION | BUSINESS INCOME / EXTRA EXPENSE - Attach ACORD 810 | VALUE REPORTING INFORMATION - Attach ACORD 811 |
|---|---|---|

**ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION**

| SPOILAGE COVERAGE (Y/N) | DESCRIPTION OF PROPERTY COVERED | LIMIT $ | DEDUCTIBLE $ | REFRIG MAINT AGREEMENT (Y/N) | OPTIONS |
|---|---|---|---|---|---|

# OF OPEN SIDES ON STRUCTURE:

| CONSTRUCTION TYPE Non-Combustible | DISTANCE TO HYDRANT FT  FIRE STAT MI | FIRE DISTRICT/CODE NUMBER | PROT CL | # STORIES | # BASM'TS | YR BUILT 2005 | TOTAL AREA |
|---|---|---|---|---|---|---|---|

BUILDING IMPROVEMENTS
WIRING, YR:
ROOFING, YR:
OTHER:      YR:
PLUMBING, YR:
HEATING, YR:

| BLDG CODE GRADE | TAX CODE | ROOF TYPE | OTHER OCCUPANCIES |
|---|---|---|---|

WIND CLASS   SEMI- RESISTIVE
RESISTIVE

HEATING BOILER ON PREMISES? (Y/N)
IF YES, IS INSURANCE PLACED ELSEWHERE? (Y/N)

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | FRONT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |
|---|---|---|---|

| BURGLAR ALARM TYPE | CERTIFICATE # | EXPIRATION DATE | CENTRAL STATION / WITH KEYS |
|---|---|---|---|

| BURGLAR ALARM INSTALLED AND SERVICED BY | EXTENT | GRADE | # GUARDS/WATCHMEN | CLOCK HOURLY |
|---|---|---|---|---|

PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO2/Chemical Systems)   % SPRNK   FIRE ALARM MANUFACTURER   CENTRAL STATION / LOCAL GONG

**ADDITIONAL INTERESTS**

| RANK: | NAME AND ADDRESS: | REFERENCE #: | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|
| INTEREST  LOSS PAYEE  MORT-GAGEE | | | | LOCATION:  BUILDING: SCHEDULED ITEM NUMBER: OTHER: |
| ITEM DESCRIPTION: | | | | |

ACORD 140 (2007/09)
INS140 (200709)

ATTACH TO ACORD 125 © 1995-2007 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: Texas Transco, Inc.

| ADDITIONAL PREMISES INFORMATION | PREMISES #: 2 | STREET ADDRESS: 13841 N. Highway 171 | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | BUILDING #: 3 | BLDG DESCRIPTION: Driver's Office | | | | | | |

| SUBJECT OF INSURANCE | AMOUNT | CONS % | VALU-ATION | CAUSES OF LOSS | INFLATION GUARD % | DED | BLKT # | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|---|
| Driver's Office | 45,419 | 80 | RC | Special | | 1,000 | | 2500 Wind and Hail |
| Business Per. Proper | 10,000 | 80 | RC | Special | | 1,000 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| ADDITIONAL INFORMATION | BUSINESS INCOME / EXTRA EXPENSE - Attach ACORD 810 | VALUE REPORTING INFORMATION - Attach ACORD 811 |
|---|---|---|

**ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION**

| SPOILAGE COVERAGE (Y/N) | DESCRIPTION OF PROPERTY COVERED | LIMIT $ | DEDUCTIBLE $ | REFRIG MAINT AGREEMENT (Y/N) | OPTIONS |
|---|---|---|---|---|---|
| | | | | | |

# OF OPEN SIDES ON STRUCTURE: ____

| CONSTRUCTION TYPE | DISTANCE TO | | FIRE DISTRICT/CODE NUMBER | PROT CL | # STORIES | # BASM'TS | YR BUILT | TOTAL AREA |
|---|---|---|---|---|---|---|---|---|
| Non-Combustible | HYDRANT FT | FIRE STAT MI | | 10 | | | 2500 | |

| BUILDING IMPROVEMENTS | | BLDG CODE GRADE | TAX CODE | ROOF TYPE | OTHER OCCUPANCIES | |
|---|---|---|---|---|---|---|
| WIRING, YR: | PLUMBING, YR: | | | | | |
| ROOFING, YR: | HEATING, YR: | WIND CLASS | SEMI- RESISTIVE | | HEATING BOILER ON PREMISES? (Y/N) | |
| OTHER: | YR: | | RESISTIVE | | IF YES, IS INSURANCE PLACED ELSEWHERE? (Y/N) | |

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | FRONT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |
|---|---|---|---|
| | | | |

| BURGLAR ALARM TYPE | CERTIFICATE # | | EXPIRATION DATE | CENTRAL STATION |
|---|---|---|---|---|
| | | | | WITH KEYS |
| BURGLAR ALARM INSTALLED AND SERVICED BY | | EXTENT | GRADE | # GUARDS/WATCHMEN | CLOCK HOURLY |
| PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO2/Chemical Systems) | % SPRNK | FIRE ALARM MANUFACTURER | | CENTRAL STATION |
| | | | | LOCAL GONG |

**ADDITIONAL INTERESTS**

| RANK: | NAME AND ADDRESS: | REFERENCE #: | | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER | |
|---|---|---|---|---|---|---|
| INTEREST | | | | | LOCATION: | BUILDING: |
| LOSS PAYEE | | | | | | |
| MORT-GAGEE | | | | | SCHEDULED ITEM NUMBER: | |
| | ITEM DESCRIPTION: | | | | OTHER: | |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND (NY: SUBSTANTIAL) CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied)

IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

IN MASSACHUSETTS, NEBRASKA, OREGON AND VERMONT, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND MAY SUBJECT THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

# ACORD ELECTRONIC DATA PROCESSING SECTION

DATE (MM/DD/YY)
10/14/2010

| PRODUCER | APPLICANT (First Named Insured) |
|---|---|
| First Insurance<br>P. O. Box 458<br><br>Antlers          OK 74523 | Texas Transco, Inc. |

| EFFECTIVE DATE | EXPIRATION DATE | BILLING PLAN | PAYMENT PLAN |
|---|---|---|---|
| 12/01/2010 | 12/01/2011 | X | AGENCY | Annual |
| | | | DIRECT | |
| FOR COMPANY USE ONLY | | | |

## PREMISES INFORMATION

LOCATION NUMBER: 2    BUILDING NUMBER: 1

| SUBJECT OF INSURANCE | | LIMIT OF INSURANCE | VALUATION TYPE | COIN % | DEDUCTIBLE | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|
| EQUIPMENT (HARDWARE) - OWNED | | $ 90,000 | ACV [X] OTHER<br>RC | 100 | $ 1,000 | |
| EQUIPMENT (HARDWARE) - LEASED (attach contract) | | $ | ACV<br>RC | | $ | |
| EQUIPMENT (HARDWARE) IN TRANSIT | | $ 50,000 | ACV<br>RC | | $ 1,000 | |
| MEDIA/DATA (SOFTWARE) | | $ | REPRODUCTION | | $ | |
| MEDIA/DATA (SOFTWARE) IN TRANSIT | | $ | REPRODUCTION | | $ | |
| EXTRA EXPENSE | | $ | PERIOD OF RESTOR. | | $ | |
| BUSINESS INTERRUPTION | | $ | PER DAY LMT  # DAYS | | DOLLAR $<br>WAITING PERIOD HRS: | |
| MECHANICAL BREAKDOWN | YES<br>NO | | | | | |
| PROTECTION AND CONTROL SYSTEM | | $ | | | $ | |
| OTHER | | $ | | | $ | |

| FLOOD COVERAGE | YES<br>NO | LOCATION OF EQUIPMENT | ABOVE GROUND<br>BELOW GROUND<br>GROUND LEVEL | EARTHQUAKE COVERAGE | | YES<br>NO |
|---|---|---|---|---|---|---|
| ZONE | | | | ZONE | | |
| BUILDING CONSTRUCTION TYPE | | | PROT CLASS | # OF STORIES | YEAR BUILT | |

## SCHEDULE OF EQUIPMENT

| LOC. # | BLDG. # | ITEM # | MANUFACTURER | MODEL | SERIAL # | LEASED OR OWNED | CURRENT FULL 100% VALUE | AMOUNT OF INSUR. (COINSURANCE %) |
|---|---|---|---|---|---|---|---|---|
| | | | PLEASE SEE ATTACHED | SCHEDULE | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | TOTALS | |

REMARKS

## GENERAL INFORMATION

| PLEASE EXPLAIN ALL "YES" RESPONSES | YES | NO | | YES | NO |
|---|---|---|---|---|---|
| 1. IN THE EVENT OF A MAJOR OR TOTAL LOSS COULD YOU RETURN TO OPERATION WITHIN ONE WEEK? | | | 7. IS THE EQUIPMENT SHIPPED BY COMPANY VEHICLE? | | |
| | | | 8. IS THE MEDIA/DATA SHIPPED BY COMMON CARRIER? | | |
| 2. DO YOU HAVE AN ARRANGEMENT FOR THE USE OF OTHER EQUIPMENT? (Attach copy of agreement) | | | 9. IS THE MEDIA/DATA SHIPPED BY COMPANY VEHICLE? | | |
| | | | 10. DOES THE PREMISES HAVE A BURGLAR ALARM? | | |
| 3. IS YOUR EQUIPMENT MANUFACTURER IN A POSITION TO REPLACE YOUR EQUIPMENT PROMPTLY? | | | 11. DOES THE APPLICANT HAVE ANY OF THE FOLLOWING DEVICES TO PROTECT THE HARDWARE FROM POWER LINE PROBLEMS? | | |
| 4. IS YOUR EQUIPMENT UNDER MANUFACTURER'S WARRANTY? | | | UNINTERRUPTIBLE POWER SOURCE | | |
| 5. DO YOU HAVE A SERVICE MAINTENANCE CONTRACT WITH A MANUFACTURER OR OTHER SERVICE CONTRACTOR? | | | LINE CONDITIONER | | |
| | | | POWER SUPPRESSOR VOLTAGE REGULATOR | | |
| 6. IS THE EQUIPMENT SHIPPED BY COMMON CARRIER? | | | DEDICATED LINE | | |

## COMPUTER ROOM INFORMATION

| PLEASE EXPLAIN ALL "YES" RESPONSES | YES | NO |
|---|---|---|
| 1. IS THE DATA PROCESSING EQUIPMENT LOCATED IN A SPECIFICALLY DESIGNATED ROOM? | | |
| 2. IS ACCESS TO THE ROOM RESTRICTED? | | |
| 3. IS THE EQUIPMENT CONTROLLED BY A MASTER SHUTDOWN SWITCH? | | |
| 4. IS THERE A SEPARATE AIRCONDITIONING SYSTEM DESIGNED TO SPECIFICALLY PROTECT THE EDP EQUIPMENT? | | |

5. THE COMPUTER ROOM IS PROTECTED BY THE FOLLOWING SYSTEMS:

☐ NONE    ☐ HALON
☐ WET SPRINKLER    ☐ $CO_2$
☐ DRY SPRINKLER SYSTEM    ☐ OTHER

| | YES | NO |
|---|---|---|
| 8. DOES THE COMPUTER ROOM HAVE A RAISED PEDESTAL FLOOR? | | |

FLOOR CONSTRUCTION TYPE
☐ COMBUSTIBLE    ☐ NON-COMBUSTIBLE

BELOW FLOOR PROTECTION
☐ SMOKE DETECTORS    ☐ OTHER
☐ HALON SYSTEM/$CO_2$ SYSTEM    ☐ NONE

| 7. ALARM TYPE | TEMPER. | HUMIDITY | SMOKE | FIRE |
|---|---|---|---|---|
| LOCAL | | | | |
| CENTRAL | | | | |

## MEDIA AND DATA (SOFTWARE) INFORMATION

| PLEASE EXPLAIN ALL "YES" RESPONSES | YES | NO |
|---|---|---|
| 1. ARE ANTI-VIRAL SAFEGUARDS IN EFFECT? | | |
| 2. ARE DUPLICATES OF SOFTWARE MAINTAINED? | | |

3. HOW OFTEN IS DATA BACKED UP?

☐ DAILY    ☐ MONTHLY    ☐ YEARLY
☐ WEEKLY    ☐ QUARTERLY    ☐ OTHER

SOFTWARE DUPLICATES & DATA BACKUP STORAGE

| DUPLICATE SOFTWARE | DATA BACKUPS | ON PREMISES LOCATION INFORMATION | |
|---|---|---|---|
| ☐ ON PREMISES | ☐ ON PREMISES | ☐ SAFE | ☐ COMPUTER ROOM |
| ☐ OFF PREMISES | ☐ OFF PREMISES | ☐ VAULT | ☐ OTHER |

NAME AND ADDRESS OF OFF PREMISES STORAGE LOCATION

## ADDITIONAL INTEREST

| INTEREST | NAME AND ADDRESS | INTEREST IN ITEM |
|---|---|---|
| ☐ ADDITIONAL INSURED | | LOCATION #: |
| ☐ LOSS PAYEE | | BUILDING #: |
| ☐ MORTGAGEE | | ITEM #: |
| ☐ LIENHOLDER | | OTHER: |
| ☐ OTHER | | |
| ☐ CERTIFICATE REQUIRED | REFERENCE #: | |

| INTEREST | NAME AND ADDRESS | INTEREST IN ITEM |
|---|---|---|
| ☐ ADDITIONAL INSURED | | LOCATION #: |
| ☐ LOSS PAYEE | | BUILDING #: |
| ☐ MORTGAGEE | | ITEM #: |
| ☐ LIENHOLDER | | OTHER: |
| ☐ OTHER | | |
| ☐ CERTIFICATE REQUIRED | REFERENCE #: | |

## REMARKS

See attached Comment/Remarks and Cresson Location Inventory

## Creason Location
### Front Office
**Tava's Desk**
| | |
|---|---|
| router - Wyse | 6AA8FB01607 |
| keyboard - Dell | 05H06502840D |
| Monitor - Dell | CN0WH318-72872-69F-0V2t |
| scanner - HP Photosmart C3140 | SDGOB-0603 |
| mail station - Pitney Bowes | 3319342 (lease) |
| Canon Image Runner 3300 | MPH88075 (lease) |

### Middle Office
**Beverly's Desk**
| | |
|---|---|
| modem - Dell | GJNQ1B1 |
| monitor - Dell | CN-0GCB11-72872-64I-43DM |
| keyboard - Dell | n/a |
| **Melanie's Desk** | |
| modem - Dell | CM0PH1 |
| monitor - Dell | CN-0DW711-71623-86D-1747 |
| keyboard - Dell | model: L100 serial#: n/a |
| scanner - HP ScanJet N6010 | CN897A706Y |
| printer - HP LaserJet 1320 | CNHC388398 |
| back up battery - APC RS 860 | 5B0744U04628 |
| | |
| fax/copier - HP LaserJet 3055 | CNRK448596 (lease) |

### Corner Office
**Melissa's Desk**
| | |
|---|---|
| modem - Dell | 4KNQ1B1 |
| monitor - Dell | CN0GCB11-72872-64I-58JM |
| keyboard - Dell | n/a |
| printer - HP LaserJet 1320 | CNL1V05041 |
| **Jennifer's Desk** | |
| modem - Dell | 4YTKP91 |
| monitor - Dell | CN0R9299-48220-5CH01Q2 |
| keyboard - Dell | a/a |
| scanner - HP ScanJet N6010 | CN82XA737T |
| Uni Sys - Smart Source | 514489137 |
| | |
| surveillence monitor | 8JM609J-002521 |

### Upstairs Office
**Patsy's Desk**
| | |
|---|---|
| modem - Dell | 2KNQ1B1 |
| monitor - eMachines eView 15L | MPL285001820B |
| keyboard - Dell | 2KNQ1B1 |
| **Marsha's Desk** | |

modem - Compaq Presario                      CNN9450178
monitor - Dell                               B198FP1 / CN0GC811728726414M4MM
keyboard - no name                           6D05302248B
printer - HP LaserJet 1320                   CNB1P83380

fax/copier - Brother MFC 7820N               U61281C7J81404

### Peggy's Office

*Peggy's desk*
modem - Dell Optiplex 755                     B6724G1
monitor - Dell 1908 WFPt                       CN-0NY134-71618-7CI-A4VS
speakers - Dell AS 501                         CN-0UH837-48220-82R-00A3
keyboard - Dell L100                           CN-0RHE59-73571-81V-02IX9
printer - Dell 1720                            CN-0JT886-75190-82K-1987
scanner - HP ScanJet N8010                     mI FCL5D-0601/sn9 CN88QA7071
copier - Canon ImageCLASS MF6530               SLX11162

*terminal server*
server SQL - Dell ECM01                         2C83VG1
server - TTC08FS01- Dell Poweredge 2800         svc code: 36146877661
server - TTC05TS01 - Dell Poweredge 2900        svc code: 19624049485
LSS2X Max                                       PKJ8Q-2RYK3-27PMQ+RXXTW-W6W31
Dell Powervault 310T                            PHI6803659
battery back-up - UPS#1                          APC Smart Ups 1500
battery back-up - UPS #2                         APC Smart Ups 1500
monitor - Dell E156FPc                          CN-0KC026-64180-62H-1I4L
keyboard - Dell L100                            CN-0R659-7357-1850-0S6F
Avocent DSR 1031                                100078498
Linksys - Wireless G - WRTS4Gv4                 CDFA0E727351
Linksys - Cisco Systems Router - RV042          DHY007906907
Windstream box - Speedstream 4390               S6NDLNAND246
Dell Power Connect 2224                         0758-06-2722
xtra monitor - Dell E170FPv                     CN-0TY222-73731-866-8C8C
Davis Amplifier - MdW DA-30A                    69412

### Cabin

*David's*
laptop - Dell                                   RF9MV-HRFDY-6PGQK-29883-G86XU
*Ed's*
laptop - Dell                                   JFXTY-FDB7F-02GXV-9T3FJ-37RCB
copier/printer - all in one
Photosmart C4200                                CN78DJF0YG
Windstream modem box                            1.40811E+11

*Marc's*
laptop - Dell D520                               G7MD2-4G923

### Dispatch Office

*Dispatch*
desk by the door
modem - Dell                                    1KNQ1B1
monitor - Dell                                  CN-06C811-72872-64I-28MM
keyboard - Dell                                 E145614
*GPS computer*
modem - Dell Intel Core 2 Duo                   811PMH1
monitor - Dell 24"                              CN-DG273H-74261-89M-OBNS
back-up battery - APC RS 800                    5.90746E+11

copier - Cannon                                 NRF02319 (lease)

timeclock tower                                 WDCNNS48262X

Kenwood two-way                                 90400247
Dura Comm                                       RABA083396
Cisco Systems                                   RA9808He14700
Firebox Watch Guard                             608276171C892
Lynksis                                         MDG30G145609

*Dee's desk*
modem - Dell                                    3084NH1
monitor - Dell 19"                              CN0C730C-71623893-0122
keyboard - Dell                                 n/a
battery backup - APC RS 800                     S90746U3Z200
printer - HP OfficeJet 6310 all in one          CN8A6FV4BD

## East Texas Location
modem - Dell OptiPlex                            17942446465
monitor - Dell (model# A225)                     CN0V98287161872AAD5E
keyboard - Dell                                  CN-0TH8364475171R00XX
printer/fax - Brother MFC 8860DN                 461509M7I580579
printer/fax - Brother MFC 8840D                  U61095LAJ885597
speakers - multimedia                            CN0HS097262371D2810

## Arkansas Location
*office*
modem - Dell Optiplex 3380                        2N935G1
monitor - Dell                                   CN0NY134-71615-7CI-734S
printer - Dell 1720                              DV118D1
Linksys                                          CGNCIJH800031
copier - Sharp ARM450                            2502988X (lease)
*shop*
laptop - Dell Inspiron 1501                       436N3F1
printer/copier - Canon ImageClass MF6550          5CY64836

AGENCY CUSTOMER ID: Texas Transco, Inc. (Part 3)

# ACORD® PROPERTY SECTION

DATE (MM/DD/YYYY)
10/14/2010

| AGENCY First Insurance | APPLICANT (First Named Insured) Texas Transco, Inc. | |
|---|---|---|
| POLICY NUMBER | CARRIER | NAIC CODE |

| EFFECTIVE DATE 12/01/2010 | EXPIRATION DATE 12/01/2011 | DIRECT BILL AGENCY BILL | PAYMENT PLAN | AUDIT | FOR COMPANY USE ONLY | |

## PREMISES INFORMATION

PREMISES #: 3    BUILDING #: 1    STREET ADDRESS: 255 Brantley Road,. Searcy Arkansas

BLDG DESCRIPTION: Office

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALU-ATION | CAUSES OF LOSS | INFLATION GUARD % | DED | BLKT # | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|---|
| Contents of Office | 20,000 | 80 | RC | Special | | 1,000 | | |
| Inventory of Shop | 50,000 | 80 | RC | Special | | 1,000 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| ADDITIONAL INFORMATION | BUSINESS INCOME / EXTRA EXPENSE - Attach ACORD 810 | VALUE REPORTING INFORMATION - Attach ACORD 811 |

## ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION

| SPOILAGE COVERAGE (Y/N) | DESCRIPTION OF PROPERTY COVERED | LIMIT $ | DEDUCTIBLE $ | REFRIG MAINT AGREEMENT (Y/N) | OPTIONS |
|---|---|---|---|---|---|

# OF OPEN SIDES ON STRUCTURE: _____

| CONSTRUCTION TYPE | DISTANCE TO HYDRANT  FIRE STAT  FT    MI | FIRE DISTRICT/CODE NUMBER | PROT CL | # STORIES | # BASM'TS | YR BUILT | TOTAL AREA |

BUILDING IMPROVEMENTS

WIRING, YR:          PLUMBING, YR:
ROOFING, YR:          HEATING, YR:
OTHER:                YR:

BLDG CODE GRADE    TAX CODE    ROOF TYPE

WIND CLASS ___ SEMI- RESISTIVE
RESISTIVE

OTHER OCCUPANCIES

HEATING BOILER ON PREMISES? (Y/N)
IF YES, IS INSURANCE PLACED ELSEWHERE? (Y/N)

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | FRONT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |

BURGLAR ALARM TYPE          CERTIFICATE #          EXPIRATION DATE
CENTRAL STATION
WITH KEYS

BURGLAR ALARM INSTALLED AND SERVICED BY          EXTENT          GRADE          # GUARDS/WATCHMEN          CLOCK HOURLY

PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO2/Chemical Systems)          % SPRNK          FIRE ALARM MANUFACTURER          CENTRAL STATION
LOCAL GONG

## ADDITIONAL INTERESTS

| RANK: | NAME AND ADDRESS: | REFERENCE #: | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER |
|---|---|---|---|---|
| INTEREST LOSS PAYEE MORT-GAGEE | | | | LOCATION:          BUILDING: |
| | | | | SCHEDULED ITEM NUMBER: |
| | ITEM DESCRIPTION: | | | OTHER: |

ACORD 140 (2007/09)          ATTACH TO ACORD 125 © 1985-2007 ACORD CORPORATION. All rights reserved.
INS140 (200709)          The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: _____

| ADDITIONAL PREMISES INFORMATION | PREMISES #: | STREET ADDRESS: | | | | | |
|---|---|---|---|---|---|---|---|
| | BUILDING #: | BLDG DESCRIPTION: | | | | | |

| SUBJECT OF INSURANCE | AMOUNT | COINS % | VALU-ATION | CAUSES OF LOSS | INFLATION GUARD % | DED | BLKT # | FORMS AND CONDITIONS TO APPLY |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| ADDITIONAL INFORMATION | BUSINESS INCOME / EXTRA EXPENSE - Attach ACORD 810 | VALUE REPORTING INFORMATION - Attach ACORD 811 |
|---|---|---|

## ADDITIONAL COVERAGES, OPTIONS, RESTRICTIONS, ENDORSEMENTS AND RATING INFORMATION

| SPOILAGE COVERAGE (Y/N) | DESCRIPTION OF PROPERTY COVERED | LIMIT $ | DEDUCTIBLE $ | REFRIG MAINT AGREEMENT (Y/N) | OPTIONS |
|---|---|---|---|---|---|
| | | | | | |

# OF OPEN SIDES ON STRUCTURE: _____

| CONSTRUCTION TYPE | DISTANCE TO HYDRANT   FIRE STAT | FIRE DISTRICT/CODE NUMBER | PROT CL | # STORIES | # BASM'TS | YR BUILT | TOTAL AREA |
|---|---|---|---|---|---|---|---|
| | FT         MI | | | | | | |

| BUILDING IMPROVEMENTS | | BLDG CODE GRADE | TAX CODE | ROOF TYPE | OTHER OCCUPANCIES |
|---|---|---|---|---|---|
| WIRING, YR | PLUMBING, YR: | | | | |
| ROOFING, YR | HEATING, YR | WIND CLASS | SEMI- RESISTIVE | HEATING BOILER ON PREMISES? (Y/N) | |
| OTHER: | YR: | RESISTIVE | | IF YES, IS INSURANCE PLACED ELSEWHERE? (Y/N) | |

| RIGHT EXPOSURE & DISTANCE | LEFT EXPOSURE & DISTANCE | FRONT EXPOSURE & DISTANCE | REAR EXPOSURE & DISTANCE |
|---|---|---|---|

| BURGLAR ALARM TYPE | CERTIFICATE # | | | EXPIRATION DATE | CENTRAL STATION WITH KEYS |
|---|---|---|---|---|---|
| BURGLAR ALARM INSTALLED AND SERVICED BY | | EXTENT | GRADE | # GUARDS/WATCHMEN | CLOCK HOURLY |
| PREMISES FIRE PROTECTION (Sprinklers, Standpipes, CO2/Chemical Systems) | % SPRNK | FIRE ALARM MANUFACTURER | | | CENTRAL STATION LOCAL GONG |

## ADDITIONAL INTERESTS

| RANK: | NAME AND ADDRESS: | REFERENCE #: | | CERTIFICATE REQUIRED | INTEREST IN ITEM NUMBER | |
|---|---|---|---|---|---|---|
| INTEREST | | | | | LOCATION: | BUILDING: |
| LOSS PAYEE MORT-GAGEE | | | | | SCHEDULED ITEM NUMBER: | |
| | ITEM DESCRIPTION: | | | | OTHER: | |

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied)

IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

IN MASSACHUSETTS, NEBRASKA, OREGON AND VERMONT, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND MAY SUBJECT THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

Texas Transco, Inc.
Bobby Price

| Address | City | State | Zip Code | Occupancy | Built | Construction | Stories | Square Footage | Owned/Rent (ed)Leased | Building Limits | Personal Property Limits (Including Stock) | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N. White Oak Rd. & Hwy. 2275 | White Oak | TX | 76803 | Dispatch Office | 2005 | Frame | 1 | | | $ 40,000 | $ | $ 40,000 |
| 13841 N. Hwy. 171 | Cresson | TX | 76035 | Shop/Office (2 Stories) | 2005 | NC | 1 | | | $207,962 | $ 150,000 | $357,962 |
| 13841 N. Hwy. 171 | Cresson | TX | 76035 | Dispatch Office | 2005 | NC | 1 | | | $121,743 | $ 25,000 | $146,743 |
| 13841 N. Hwy. 171 | Cresson | TX | 76035 | Sales Office | 2005 | NC | 1 | | | $ 45,419 | 10,000 | $ 55,419 |
| 12000 S. Highway 35W | Grandview | TX | 72143 | Fresh Water Pit/Currently the Drilling Rig Site on the Property; Leslie Hacker, TT's Disposal Manager Lives in a Manufactured Home on the Property Owned by Texas Transco | | | | | | | | |
| 120 Bailey Street | Searcy | AR | 72143 | Leased Office (Contents) | 2005 | Frame | 1 | | Leased | $ - | 20,000 | $ 20,000 |
| 120 Bailey Street | Searcy | AR | 72143 | Leased Shop (Inventory) | 2005 | Frame | 1 | | Leased | $ - | 50,000 | $ 50,000 |
| 120 Bailey Street | Searcy | AR | 72143 | Searcy Fuel Tank | | | | | | $ - | 40,000 | $ 40,000 |
| 13995-B Hwy 85 | Bee Branch | AR | 72013 | Leased Yard (area for shift change) | | | | | Leased | $ - | | $ - |
| 13995-B Hwy 85 | Bee Branch | AR | 72013 | Searcy Fuel Tank | | | | | | $ - | 40,000 | $ 40,000 |
| 113 Main Street | Ulster | PA | 18850 | Office for location; also houses employees (contents) | | Frame | 2 | | Leased office/house | $ - | 50,000 | $ 50,000 |
| RR 2 Box 94-1 | Ulster | PA | 18850 | Shop & yard (Inventory) | | | 1 | | Leased shop & yard | $ - | 50,000 | $ 50,000 |
| 20 Acres in Coal County | | | | | | | | | | | | $ - |
| Total Insured Values | | | | | | | | | | | | $860,114 |

# ACORD

## COMMERCIAL INSURANCE APPLICATION
### APPLICANT INFORMATION SECTION

| | DATE (MM/DD/YYYY) |
|---|---|
| | 10/14/2010 |

**AGENCY**
First Insurance

P. O. Box 458

Antlers            OK  74523

**CONTACT NAME:** Donna Hardman
**PHONE (A/C, No, Ext):** (580) 298-4057
**FAX (A/C, No):** (580) 298-3771
**E-MAIL ADDRESS:** jimlewis@firstbank-ok.com
**CODE:**                        **SUB CODE:**
**AGENCY CUSTOMER ID:** Texas Transco

**CARRIER**                                                          **NAIC CODE**

| UNDERWRITER | | UNDERWRITER OFFICE | |
|---|---|---|---|
| POLICIES OR PROGRAM REQUESTED | | POLICY NUMBER | |

**INDICATE SECTIONS ATTACHED**

| | | | |
|---|---|---|---|
| ACCOUNTS RECEIVABLE/VALUABLE PAPERS | ELECTRONIC DATA PROC | TRUCKERS/MOTOR CARRIER | |
| BOILER & MACHINERY | EQUIPMENT FLOATER | UMBRELLA | |
| BUSINESS AUTO | GARAGE AND DEALERS | VEHICLE SCHEDULE | |
| COMMERCIAL GENERAL LIABILITY | GLASS AND SIGN | WORKERS COMPENSATION | |
| CRIME/MISCELLANEOUS CRIME | INSTALLATION/BUILDERS RISK | YACHT | |
| DEALERS | OPEN CARGO | | |
| DRIVER INFO SCHEDULE | PROPERTY | | |
| | TRANSPORTATION/MOTOR TRUCK CARGO | | |

## STATUS OF TRANSACTION | PACKAGE POLICY INFORMATION

| QUOTE | ISSUE POLICY | RENEW |
|---|---|---|
| BOUND (Give Date and/or Attach Copy): | | |

ENTER THIS INFORMATION WHEN COMMON DATES AND TERMS APPLY TO SEVERAL LINES, OR FOR MONOLINE POLICIES.

| | DATE | TIME | | PROPOSED EFF DATE | PROPOSED EXP DATE | BILLING PLAN | PAYMENT PLAN | AUDIT |
|---|---|---|---|---|---|---|---|---|
| CHANGE | | | AM | 12/01/2010 | 12/01/2011 | DIRECT BILL | | |
| CANCEL | 12/01/2010 | 12:01 | PM | | | X AGENCY BILL | PACKAGE POLICY PREMIUM: $ | |

## APPLICANT INFORMATION

**NAME (First Named Insured & Other Named Insureds)**
Texas Transco, Inc.

Bobby Price, Individual

**MAILING ADDRESS INCL ZIP+4 (of First Named Insured)**
P. O. Box 555

Cresson                    TX 76035

| FEIN OR SOC SEC # (of First Named Insured) | 73-1546550 | PHONE (A/C, No, Ext): | (817) 396-4706 | | |
|---|---|---|---|---|---|
| **E-MAIL ADDRESS(ES):** Peggy.Bartrug@txtransco.com | | | **WEBSITE ADDRESS(ES):** | | |

| | | SUBCHAPTER "S" CORPORATION | LLC | NO. OF MEMBERS AND MANAGERS | CR BUREAU NAME: | |
|---|---|---|---|---|---|---|
| INDIVIDUAL | X CORPORATION | NOT FOR PROFIT ORG | | ID NUMBER: | | DATE BUS STARTED 07/27/1998 |
| PARTNERSHIP | JOINT VENTURE | | | | | |

| INSPECTION CONTACT: Peggy Bartrug | | ACCOUNTING RECORDS CONTACT: Peggy Bartrug | |
|---|---|---|---|
| PHONE (A/C, No, Ext): (817) 396-4706 | E-MAIL ADDRESS: peggy.bartrug@txtrans | PHONE (A/C, No, Ext): (817) 396-4706 | E-MAIL ADDRESS: peggy.bartrug@txtrans |

## PREMISES INFORMATION | ACORD 823 attached for additional premises

| LOC # | BLD # | STREET, CITY, COUNTY, STATE, ZIP+4 | CITY LIMITS | INTEREST | YR BUILT | # EMPLOYEES | ANNUAL REVENUES | % OCCUPIED |
|---|---|---|---|---|---|---|---|---|
| | | see attached property schedule | INSIDE | OWNER | | | | |
| | | | OUTSIDE | TENANT | | | | |
| | | | INSIDE | OWNER | | | | |
| | | | OUTSIDE | TENANT | | | | |
| | | | INSIDE | OWNER | | | | |
| | | | OUTSIDE | TENANT | | | | |
| | | | INSIDE | OWNER | | | | |
| | | | OUTSIDE | TENANT | | | | |

## NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)

Texas Transco, Inc., has been involved in the oil/gas vacuum service business since 1994. They operate 101 power units.  Products hauled are limited to brine water and drilling mud only. The insured hauls no petroleum/flamable liquids.

## GENERAL INFORMATION

AGENCY CUSTOMER ID: Texas Transco, Inc.

EXPLAIN ALL "YES" RESPONSES | Y/N

| | |
|---|---|
| 1a. IS THE APPLICANT A SUBSIDIARY OF ANOTHER ENTITY ? | N |
| 1b. DOES THE APPLICANT HAVE ANY SUBSIDIARIES? | N |
| 2. IS A FORMAL SAFETY PROGRAM IN OPERATION? | N |
| 3. ANY EXPOSURE TO FLAMMABLES, EXPLOSIVES, CHEMICALS? | N |
| 4. ANY CATASTROPHE EXPOSURE? | N |
| 5. ANY OTHER INSURANCE WITH THIS COMPANY OR BEING SUBMITTED? | N |
| 6. ANY POLICY OR COVERAGE DECLINED, CANCELLED OR NON-RENEWED DURING THE PRIOR THREE (3) YEARS?  (Not applicable in MO) | N |
| 7. ANY PAST LOSSES OR CLAIMS RELATING TO SEXUAL ABUSE OR MOLESTATION ALLEGATIONS, DISCRIMINATION OR NEGLIGENT HIRING? | N |
| 8. DURING THE LAST FIVE YEARS (TEN IN RI), HAS ANY APPLICANT BEEN INDICTED FOR OR CONVICTED OF ANY DEGREE OF THE CRIME OF FRAUD, BRIBERY, ARSON OR ANY OTHER ARSON-RELATED CRIME IN CONNECTION WITH THIS OR ANY OTHER PROPERTY?  (In RI, this question must be answered by any applicant for property insurance.  Failure to disclose the existence of an arson conviction is a misdemeanor punishable by a sentence of up to one year of imprisonment). | N |
| 9. ANY UNCORRECTED FIRE CODE VIOLATIONS? | N |
| 10. ANY BANKRUPTCIES, TAX OR CREDIT LIENS AGAINST THE APPLICANT IN THE PAST FIVE (5) YEARS? | N |
| 11. HAS BUSINESS BEEN PLACED IN A TRUST?  IF "YES", NAME OF TRUST: | N |
| 12. ANY FOREIGN OPERATIONS, FOREIGN PRODUCTS DISTRIBUTED IN USA, OR US PRODUCTS SOLD/DISTRIBUTED IN FOREIGN COUNTRIES?  (If "YES", attach ACORD 815 for Liability Exposure and/or ACORD 816 for Property Exposure) | N |

REMARKS/PROCESSING INSTRUCTIONS (Attach additional sheets if more space is required)

COPY OF THE NOTICE OF INFORMATION PRACTICES (PRIVACY) HAS BEEN GIVEN TO THE APPLICANT. (Not applicable in all states, consult your agent or broker for your state's requirements.)

NOTICE OF INSURANCE INFORMATION PRACTICES - PERSONAL INFORMATION ABOUT YOU, INCLUDING INFORMATION FROM A CREDIT REPORT, MAY BE COLLECTED FROM PERSONS OTHER THAN YOU IN CONNECTION WITH THIS APPLICATION FOR INSURANCE AND SUBSEQUENT POLICY RENEWALS.  SUCH INFORMATION AS WELL AS OTHER PERSONAL AND PRIVILEGED INFORMATION COLLECTED BY US OR OUR AGENTS MAY IN CERTAIN CIRCUMSTANCES BE DISCLOSED TO THIRD PARTIES WITHOUT YOUR AUTHORIZATION.  YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES.  A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. CONTACT YOUR AGENT OR BROKER FOR INSTRUCTIONS ON HOW TO SUBMIT A REQUEST TO US.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR, or VT; in DC, LA, ME, TN, VA and WA, insurance benefits may also be denied).

IN FLORIDA, ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION.  HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

| PRODUCER'S NAME (Please Print) | | STATE PRODUCER LICENSE NO (Required in Florida) |
|---|---|---|
| PRODUCER'S SIGNATURE | DONNA HARDMAN | |
| APPLICANT'S SIGNATURE | DATE 10/06/2009 | NATIONAL PRODUCER NUMBER |

ACORD 125 (2007/10)                    Page 2 of 3
INS125 (200710)

## PRIOR CARRIER INFORMATION

AGENCY CUSTOMER ID: Texas Transco, Inc.

| LINE | | CATEGORY | | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE | CLAIMS MADE | OCCURRENCE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C O M M E R C I A L   G E N E R A L   L I A B I L I T Y | | CARRIER | AIG | | | | | | | | | | |
| | | POLICY NUMBER | CL 488-28-57 | | | | | | | | | | |
| | | POLICY TYPE | | | | | | | | | | | |
| | | RETRO DATE | | | | | | | | | | | |
| | | EFF-EXP DATE | 12/01/2009 12/01/2010 | | | | | | | | | | |
| | L I M I T S | GENERAL AGGREGATE | 1,000,000 | | | | | | | | | | |
| | | PRODUCTS COMP OP AGGREGATE | 2,000,000 | | | | | | | | | | |
| | | PERSONAL & ADV INJ | 1,000,000 | | | | | | | | | | |
| | | EACH OCCURRENCE | 1,000,000 | | | | | | | | | | |
| | | FIRE DAMAGE | | | | | | | | | | | |
| | | MEDICAL EXPENSE | | | | | | | | | | | |
| | | BODILY INJURY OCCURRENCE | | | | | | | | | | | |
| | | AGGREGATE | | | | | | | | | | | |
| | | PROPERTY DAMAGE OCCURRENCE | | | | | | | | | | | |
| | | AGGREGATE | | | | | | | | | | | |
| | | COMBINED SINGLE LIMIT | | | | | | | | | | | |
| | | MODIFICATION FACTOR | | | | | | | | | | | |
| | | TOTAL PREMIUM | | | | | | | | | | | |
| A U T O M O B I L E   L I A B I L I T Y | | CARRIER | AIG | | | | | | | | | | |
| | | POLICY NUMBER | 1594424 | | | | | | | | | | |
| | | POLICY TYPE | BA | | | | | | | | | | |
| | | EFF-EXP DATE | 12/01/2009 12/01/2010 | | | | | | | | | | |
| | | COMBINED SINGLE LIMIT | 1,000,000 | | | | | | | | | | |
| | | BODILY INJURY EA PERSON | | | | | | | | | | | |
| | | EA ACCIDENT | | | | | | | | | | | |
| | | PROPERTY DAMAGE | | | | | | | | | | | |
| | | MODIFICATION FACTOR | | | | | | | | | | | |
| | | TOTAL PREMIUM | | | | | | | | | | | |
| P R O P E R T Y | | CARRIER | General Star Indemni | | | | | | | | | | |
| | | POLICY NUMBER | IDG923114B | | | | | | | | | | |
| | | POLICY TYPE | Prope | | | | | | | | | | |
| | | EFF-EXP DATE | 12/01/2009 12/01/2010 | | | | | | | | | | |
| | | X BUILDING AMT | | | | | | | | | | | |
| | | X PERS PROP AMT | | | | | | | | | | | |
| | | MODIFICATION FACTOR | | | | | | | | | | | |
| | | TOTAL PREMIUM | | | | | | | | | | | |
| | | CARRIER | | | | | | | | | | | |
| | | POLICY NUMBER | | | | | | | | | | | |
| | | POLICY TYPE | | | | | | | | | | | |
| | | EFF-EXP DATE | | | | | | | | | | | |
| | | LIMIT | | | | | | | | | | | |
| | | MODIFICATION FACTOR | | | | | | | | | | | |
| | | TOTAL PREMIUM | | | | | | | | | | | |

## LOSS HISTORY

ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY)

CHK HERE IF NONE ☐    SEE ATTACHED LOSS SUMMARY ☐

| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | CLAIM STATUS OPEN CLSD |
|---|---|---|---|---|---|---|
| | | See attached loss runs | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

REMARKS     NOTE: FIDELITY REQUIRES A FIVE YEAR LOSS HISTORY

ATTACHMENTS

STATE SUPPLEMENT(S) (if applicable) ☐

## LOCATIONS FOR TEXAS TRANSCO, INC.

1.   N White Oak Road & Highway 2275, White Oak, TX
2.   13841 N. Highway 171, Cresson, TX
3.   12000 S. Highway 35W, Grandview, TX
4.   120 Bailey Street, Searcy, Arkansas
5.   220 S. Highway 7, Atoka, OK
6.   20 acres in Coal County, OK
7.   13965-B Highway 65, Bee Branch, AR  72013
8.   113 Main Street, Ulster, PA
9.   RR2. Box 9A-1, Ulster, PA

# Texas Transco, Inc.
## History and Nature of Business

Bobby Price, owner and President of Texas Transco, Inc. has worked in the oilfield since 1975. Mr. Price put himself through college and obtained an agriculture education degree from Oklahoma State University in 1979. After graduating from college, his father and he started an oilfield and vacuum truck company. It grew from a single truck in 1979 to 25 trucks in 1995 at which point Mr. Price left and went out on his own to start Texas Transco.

Texas Transco, Inc. (TTI) is an oilfield service business.   He started the company with 1 truck in 1995 and currently has a fleet of 101 trucks. The fleet is made up of 2005-2008 year model trucks, 56 frac tanks, dirt construction equipment (dozers, trachoe, tractors, pumps, etc.). Texas Transco incorporated July 27, 1998 and has operated under Texas Transco, Inc. since that date. TTI's primary market is hauling salt water from oil/gas wells to disposal wells. They also haul fresh water and drilling mud to oil/gas well sites. The additional services they provide for the oil and gas drilling industry are: trucking drilling/completion fluids, disposing of drilling mud, backfilling (closing) reserve pits and restoring locations in the East Texas, Barnett Shale and Woodford Shale areas.

**Currently TTI has 4 yards in prime locations & owns and operates two salt-water disposal wells (SWD):**

**1. Cresson, Texas:** Salt Water Disposal #1 is the Johnson County #1 salt water disposal in Cresson, Texas (about 25 miles south of Ft. Worth) serving the Barnett Shale.  This disposal well in Cresson has the largest capacity of the two wells permitted at 25,000 barrels per day. TTI's main business office is also located in Cresson, Texas where we own 15 acres. This site runs approximately 53 vacuum transports, 56 frac tanks and includes the disposal well, main business office, repair shop, and dispatch office.

**2. White Oak, Texas:** Salt Water Disposal #2 is the Beulah Jones #1 salt water disposal and is located in White Oak, Texas and serving the East Texas area.  TTI owns 5 acres at this location where we have a dispatch office and disposal. The Beulah Jones SWD is permitted for 6,000 barrels per day. The White Oak yard runs approximately 10 vacuum transports and is also our main location for the

land-farming operation (spreading drilling mud & fluids on pastures), as well as backfilling reserve pits and restoring locations in the Longview & Tyler areas.

**3. Coalgate, Oklahoma:**  Gas exploration in the Woodford Shale prompted TTI to move 11 trucks to this area.   TTI owns 22 acres where we also have a permit for an additional salt water disposal permitted for 30,000 bbls per day.  TTI has been operating in Oklahoma for approximately two years.

**4. Searcy, Arkansas:** TTI opened its 4th truck yard in Searcy, Arkansas April 15, 2008 where we have 27 trucks.

TTI is also permitted for an additional salt water disposal in Grandview, TX where we currently own 36 acres on I-35. TTI has drilled a fresh water well on this property and are currently serving the Barnett Shale area. The Grandview salt water disposal is permitted for 20,000 bbl per day, it has not been drilled but the location has been built and quite a bit of the electrical work done.

TTI has plans in the near future for expanding to the Ardmore, Durant & El Reno, Oklahoma areas as well as West Texas & Pennsylvania.

Texas Transco, Inc. relies heavily on our strong reputation as a reliable company. We are in areas where there is a great need for vacuum trucks, equipment, drilling rigs and our services.   All areas that Texas Transco is currently serving are experiencing exponential growth.

 **Alterra**

ALTERRA EXCESS & SURPLUS INSURANCE COMPANY
9020 Stony Point Parkway, Suite 325
Richmond, VA  23235 USA

## COMMON POLICY DECLARATIONS

Name & Mailing Address of Insured:
Texas Transco, Inc.
PO Box 555

Cresson          TX  76035

Policy Number: MAX5IM0047308

Producer Name & Mailing Address:
Avreco
550 West Van Buren, Suite 1200

Chicago          IL  60607

Policy Period:  December 1, 2010      / December 1, 2011
12:01 A.M. Standard Time at your mailing address shown hereon.

**IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

Legal Entity:  Corporation
Business Description:  Oil and gas vacuum service

**THIS POLICY CONSISTS ONLY OF THE FOLLOWING DECLARATION(S) AND COVERAGE(S) FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

|  |  | Premium |
|---|---|---|
| Property | $ | 2,673 |
| Contractors Equipment | $ | 15,052 |
| Well Servicing, Drilling and Workover Equipment - | $ | 16,792 |
| Motor Truck Cargo Legal Liability | $ | 17,000 |
| A 25% minimum earned premium applies |  |  |
| Total Premium | $ | 51,517 |
| Policy Fee | $ | n/a |

Other Considerations: $ _____ n/a _____   Policy fee which is fully earned and not subject to commission.

( )  Premium charge for coverage of certified acts of terrorism            $ ___ excluded ___
       (Per Policyholder Disclosure TRIA Attached)

(X) Coverage for certified acts of terrorism has been rejected; exclusion attached.
       (Per Policyholder Disclosure TRIA Attached)

**Premium shown is payable at inception**

Forms applicable to all coverage(s): See Forms Endorsement (MI0005 07/08)

Date Issued:  01/12/2011
Issuing Office: Marine-Dallas

Authorized Representative: _____

MI0001 (10/10)


EXHIBIT
B

POLICY NO:   MAX5IM0047308

# FORMS ENDORSEMENT

**The following are the forms attached to and forming a part of the policy at inception:**

| | |
|---|---|
| MI0001_1010 | COMMON POLICY DECLARATIONS {10-10} |
| MI0005 | FORMS ENDORSEMENT SCHEDULE {07-08} |
| MXM110 | ALTERRA POLICYHOLDER NOTICE |
| CM0001 | COMMERCIAL INLAND MARINE CONDITIONS {09-04} |
| IL0003 | CALCULATION OF PREMIUM {09-07} |
| IL0017 | COMMON POLICY CONDITIONS {11-98} |
| MI0004 | EXCLUSION OF ACTS OF BIOLOGICAL OR CHEMICAL TERRORISM {07-08} |
| MI0002 | FUNGI LIMITATION ENDORSEMENT {07-08} |
| MI0003 | DETRIMENTAL CODE EXCLUSION {07-08} |
| MI0006 | EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM {07-08} |
| MI0008_1010 | DEBRIS AND POLLUTANT REMOVAL POLICY AMENDMENT {10-10} |
| MI0009 | EQUIPMENT SCHEDULE - ALL LINES {07-08} |
| MI0010_1010 | EARTHQUAKE EXCLUSION {10-10} |
| MI0012_1010 | FLOOD EXCLUSION {10-10} |
| ILN001 | FRAUD STATEMENT {09-03} |
| MI0022 | IMPORTANT NOTICE REGARDING TERRORISM COVERAGE REJECTS {07-08} |
| MI0032_1010 | SERVICE OF SUIT CLAUSE - TEXAS {10-10} |
| MXM104_1010 | IMPORTANT NOTICE - TEXAS {10-10} |
| MI0601_1010 | CONTRACTORS EQUIPMENT COVERAGE DECLARATIONS {10-10} |
| MI0602 | CONTRACTORS EQUIPMENT COVERAGE FORM {07-08} |
| MI1301_1010 | MOTOR TRUCK CARGO LEGAL LIABILITY DECLARATIONS {10-10} |
| MI1302_1010 | MOTOR TRUCK CARGO LEGAL LIABILITY {10-10} |
| MI1305_1010 | TARPAULIN WARRANTY {10-10} |
| MI1501_1010 | WELL SERVICING DRILLING AND WORKOVER DECLARATIONS {10-10} |
| MI1502_1010 | WELL SERVICING DRILLING AND WORKOVER EQUIPMENT COVERAGE FORM {10-10} |
| MI1601_1010 | COMMERCIAL PROPERTY COVERAGE DECLARATIONS {10-10} |
| MBM102_1010 | COMMERCIAL PROPERTY CONDITIONS {10-10} |
| MI1605_1010 | ABSOLUTE POLLUTANT AND ASBESTOS EXCLUSIONS {10-10} |
| MI1613 | MANUSCRIPT LOCATION SCHEDULE {07-08} |
| CP0010 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM {06-07} |
| CP1030 | CAUSES OF LOSS - SPECIAL FORM {06-07} |
| MI0035_1010 | GENERAL PURPOSE ENDORSEMENT {10-10} |
| MXM103_1010 | PRIVACY POLICY |



Dear Policyholder:

### Alterra Specialty

As you may be aware, in May 2010 Max Capital Group Ltd. and Harbor Point Limited combined their talents and resources to form Alterra Capital Holdings Limited, a financially powerful, highly rated, global enterprise with enhanced scale and capital of approximately $3 billion.

As a consequence of the merger, all Alterra operating companies are being renamed, and we are pleased to announce that Max Specialty Insurance Company is now officially named **Alterra Excess & Surplus Insurance Company.**

For our valued policyholders, this means business as usual. Our name change does not alter your contract terms or policy in any way. We continue to be the right choice for you and remain committed to providing hallmark service and disciplined and balanced risk taking.

All references in your policy to "MAX SPECIALTY INSURANCE COMPANY" are hereby changed effective September 30, 2010 to "ALTERRA EXCESS & SURPLUS INSURANCE COMPANY." All other policy terms, exclusions and conditions remain unchanged.

With more than 500 exceptional professionals working in major insurance markets worldwide, Alterra provides a wide range of niche and specialty insurance and reinsurance products for corporations, public entities, and property and casualty insurers. Alterra operating companies have financial strength ratings of 'A (Excellent)' from A.M Best, 'A-' from S&P, 'A' from Fitch, and 'A3' from Moody's.

For additional information, please visit our website www.alterracap.com

Sincerely,

Stephen J. Vaccaro, Jr.
President & CEO

**Alterra Specialty**
Alterra Excess & Surplus Insurance Company       Tel: 804 287 6900
Max America Insurance Company                    Fax: 804 287 6933
9020 Stony Point Parkway, Suite 325              info@alterracap.com
Richmond, VA 23235, USA                          www.alterracap.com

MXM110 (10/10)

COMMERCIAL INLAND MARINE
CM 00 01 09 04

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the loss or damage. Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the loss or damage occurred.

4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

2. We will not pay you more than your financial interest in the Covered Property.

3. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

4. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

© ISO Properties, Inc., 2003



5. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

   a. We have reached agreement with you on the amount of the loss; or

   b. An appraisal award has been made.

6. We will not be liable for any part of a loss that has been paid or made good by others.

F. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

G. Pair, Sets Or Parts

1. Pair Or Set

   In case of loss or damage to any part of a pair or set we may:

   a. Repair or replace any part to restore the pair or set to its value before the loss or damage; or

   b. Pay the difference between the value of the pair or set before and after the loss or damage.

2. Parts

   In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

H. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

I. Reinstatement Of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property.

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance; or

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you.

This will not restrict your insurance.

GENERAL CONDITIONS

A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after you first have knowledge of the direct loss or damage.

© ISO Properties, Inc., 2003

CM 00 01 09 04

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period, Coverage Territory**

We cover loss or damage commencing:

1. During the policy period shown in the Declarations; and

2. Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

1. The actual cash value of that property;

2. The cost of reasonably restoring that property to its condition immediately before loss or damage; or

3. The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

IL 00 03 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

MI0004 (07/08)

THIS ENDORESEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

## EXCLUSION OF ACTS OF BIOLOGICAL OR CHEMICAL TERRORISM

This endorsement modifies Insurance provided under the following:

Commercial Crime Coverage Part(s)
Commercial Inland Marine Coverage Part(s)
Commercial Property Coverage Part(s)
Farm Coverage Part(s)
Standard Property Policy
American Business Coverage Policy – Section 1

I.  Exclusion of an Other Act of Terrorism

We will not pay for loss, damage, or any liability caused directly or indirectly by an other act of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or both of the following are attributed to such act:

A. The terrorism is carried out by means of the dispersal or applications of pathogenic or poisonous biological or chemical materials; or

B. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

II. Coverage for Certain Fire Losses

A. 1. If the location of your Covered Property or Property Insured is within a jurisdiction that has a Standard Fire Policy law that does not exempt Commercial Inland Marine, item II.B (below) further modifies insurance under the following coverage parts:

Commercial Inland Marine Coverage Part(s)
Commercial Property Coverage Part(s)
Farm Coverage Part(s)
Standard Property Policy
American Business Coverage Policy- Section 1

2. If the location of your Covered Property or Property Insured is within a jurisdiction that has a Standard Fire Policy law that exempts Commercial Inland Marine, item II.B. (below) further modifies insurance under the following coverage parts:

Commercial Property Coverage Part(s)
Farm Coverage Part(s)
Standard Property Policy
American Business Coverage Policy- Section 1

B. If an other act of terrorism results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property or Property Insured. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form, or the Leasehold Interest Coverage Form, or the Net Leasehold Coverage Form.

III. Application of Other Exclusion

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Section, or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

IV. Definitions

The following definitions are added with respect to the provisions of this endorsement:

A. Certified act of terrorism means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a certified act of terrorism include the following:

1. The act resulted in aggregate losses in excess of $ 5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. Other act of terrorism means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant Terrorism Risk Insurance Act of 2002. However, other act of terrorism does not include an act which meets the criteria set forth in Paragraph A.2. of the definition of certified act of terrorism, when such act resulted in aggregate losses of $5 million or less.

V. This endorsement is otherwise subject to all terms, conditions, provisions and stipulations of the policy to which it is attached.

MI0004 (07/08)

MI0002 (07/08)

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

## FUNGI LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

Commercial Property Coverage Part
Property-Gard Select Real and Personal Property Coverage Section
Commercial Inland Marine Coverage Part
Standard Property Policy
All Other Property or Inland Marine Coverage Forms, Sections, or Endorsements attached to this policy

1.  The terms fungus and mold are deleted wherever they may appear in the coverage parts, coverage sections, forms or endorsements described above and attached to this policy.

2.  The following exclusion applies to any coverage part, coverage from, coverage section, coverage provision, extension of coverage, coverage enhancement, or amendatory endorsement attached to this policy:

a.  This insurance does not apply to any loss, damage, expense, injury, economic loss, economic detriment, liability, or claim, directly or indirectly, arising out of, caused by, resulting from, happening through, or in consequence of fungi, notwithstanding any other provision of this policy to the contrary. This includes the cost to test for, monitor, abate, mitigate, remove, dispose of, or remediate fungi.

b.  Such loss, damage, expense, injury, economic loss, economic detriment, liability, or claim is excluded regardless of any other cause, condition, event, material, product or building component, that contributes concurrently or in any sequence to the loss, damage, expense, injury, economic loss, economic detriment, liability or claim.

3.  The following coverage extension is added:

*Fungi*

a.  If fungi is the result of a Covered Cause of Loss, we will pay, subject to the limitation in subsection 3.d. (below), for:

1.  Direct physical loss or damage to Covered Property, or Property Insured; or
2.  Your liability for property of others;

At the premises shown in the Declarations caused by or resulting from fungi. This includes the necessary and reasonable cost incurred to test for, monitor, abate, mitigate, remove, dispose of, or remediate fungi.

b.  Coverage provided by this extension applies only if the presence of fungi is reported to us within 30 days of the occurrence of the covered loss that is alleged to have caused this condition.

c.  Coverage provided by this extension includes:

1.  The actual loss of Business Income you sustain;

2.  The necessary Extra Expense you incur; or

3.  Ordinance or Law Coverage;

If the Coverage Section, policy Declarations, or an endorsement attached to this policy show that you have Business Income, Extra Expense, or Ordinance or Law Coverage.

d.  Regardless of any other limits or coverages stated in this policy, or the number of locations involved, the most we will pay under this coverage extension in any one occurrence or in the annual aggregate during this policy period is $25,000. The provisions of this extension do not increase any Limits of Insurance provided by this policy.

MI0002 (07/08)

Page 1 of 2

4.   Additional Definitions

a.   Annual Aggregate means the most we will pay for all loss or damage arising from all occurrence(s) during any one Policy Period. Annual Aggregate Limit(s) of Insurance are reduced by the amount of any paid loss insured under this coverage extension.

If the policy is written for a term of more than one year, we will apply for the annual aggregate limit of insurance separately to each consecutive year of the Policy Period. If the policy is extended for a period of time that is less than a year, the annual aggregate from the prior term applies to the extended period of time.

b.   Fungi means all types of fungus, such as mildew and mold, and all of their resulting spores and byproducts, including mycotoxins and allergens. Fungi does not mean fungi for human ingestion.

For purposes of this Fungi Coverage Extension, fungi is not considered a pollutant.

This endorsement is otherwise subject to all other terms, conditions, provisions and stipulations of the policy to which it is attached.

MI0002 (07/08)

MI0003 (07/08)

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

## DETRIMENTAL CODE EXCLUSION

This endorsement modifies insurance provided under the following:

Commercial Property Coverage Part
Property-Gard Select Real and Personal Property Coverage Section
Commercial Inland Marine Coverage Part
Commercial Crime Coverage Part
Standard Property Policy
All Other Property, Inland Marine, or Crime Coverage Forms or Endorsements attached to this policy

The following exclusion applies to any coverage part, coverage form, coverage section, coverage provision, extension of coverage, additional coverage, coverage enhancement, or amendatory endorsement attached to this policy:

1. This insurance does not apply to any loss, damage, expense, injury, economic loss, economic detriment, liability, or claim, directly or indirectly, arising out of, caused by, resulting from, happening through, or in consequence of detrimental code, notwithstanding any other provision of this policy to the contrary.

2. Such loss, damage, expense, injury, economic loss, economic detriment, liability or claim is excluded regardless of any other cause, condition, or event that contributes concurrently or in any sequence to the loss, damage, expense, injury, economic loss, economic detriment, liability or claim.

3. This exclusion applies regardless of who introduced the detrimental code, even if the detrimental code was introduced by your employees.

Definition:

Detrimental Code means any computer virus, program, routine, sub-routine, trojan horse, worm, script or other code string that destroys, alters or corrupts Covered Property, Property Insured, or property of others for which you are liable, regardless of how the detrimental code was introduced or acquired.

This endorsement is otherwise subject to all terms, conditions, provisions and stipulations of the policy to which it is attached.

MI0003 (07/08)                                        Page 1 of 1

# EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
**COMMERCIAL CRIME COVERAGE FORM**
**COMMERCIAL CRIME POLICY**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL PROPERTY EXCESS OF LOSS**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

(The following needs to be completed only when this endorsement is issued subsequent to inception of the policy.)

| Named Insured   Texas Transco, Inc. | | |
|---|---|---|
| Endorsement Effective<br>December 1, 2010 | Policy Number<br>MAX5IM0047308 | Countersigned by |
| | | (Authorized Representative) |

A. The following definitions are added with respect to the provisions of this endorsement:

1. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The criteria contained in the Act for a "certified act of terrorism" include the following:

   a. The act resulted in aggregate losses in excess of $5 million; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.

B. The following exclusion is added:

**Exclusion Of Certified Acts And Other Acts Of Terrorism**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism".  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

C. **Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

All other terms and conditions of this policy remain unchanged.

MI0006 (07/08)



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEBRIS AND POLLUTANT REMOVAL POLICY AMENDMENT

NAMED INSURED: Texas Transco, Inc.                                    DATE: December 1, 2010

Policy Amendment

Your policy is amended as follows:

1.  The following Extension of Coverage is added. If your policy does not provide coverage for debris removal, this Extension of Coverage adds debris removal coverage. If your policy does provide debris removal coverage, any other debris removal coverage provided by your policy is deleted and replaced by this Extension of Coverage.

    Debris Removal. We will pay your reasonable cost to remove the debris of insured property caused by or resulting from an insured peril which occurs during the policy period.

    This coverage only applies if no later than 180 days from the date of loss or the end of the policy period, whichever comes first, you:

    (1)  discover the loss, and

    (2)  report the cost to us in writing.

    We will pay up to 25% of the sum of:

    (1)  the direct physical loss otherwise payable under the policy, and

    (2)  the deductible.

    Payments under this Debris Removal coverage will not increase the Limit of Liability applicable to the insured property.

    Debris Removal Additional Limit. If your cost for debris removal exceeds the amount we pay under the Limit of Liability applicable to the insured property, we will pay up to the lesser of:

    (1)  10% of the applicable Limit of Liability; or

    (2)  $100,000

    as an Additional Limit of Liability for debris removal.

    We will not pay:

    (1)  the cost to extract POLLUTANTS from land or water (except as provided under Pollutant Removal below);

    (2)  the cost to repair, replace or restore property damaged or destroyed by debris removal;

MI0008 (10/10)                                                          Page 1 of 3

(3) the cost to remove debris from any location used for handling, treatment, storage or disposal of waste unless the policy is extended to cover property at that specifically identified location.

2. The following Extension of Coverage is added:

Pollutant Removal. We will pay your reasonable cost to extract POLLUTANTS from land or water. The release, discharge or dispersal of the POLLUTANTS must result from an insured loss and must occur during the policy period.

This coverage only applies if no later than 180 days from the date of loss or from the end of the policy period, whichever comes first, you:

(1) discover the loss, and

(2) report the cost to us in writing.

The most we will pay in any one loss is the lesser of:

(1) 10% of the applicable Limit of Liability; or

(2) $10,000

Under this Extension of Coverage, the most we will pay for all claims for loss which occurs at any one location during the policy period is $10,000. If this policy is written for a term of more than one year, we will apply this limit separately to each consecutive year of the policy period.

We will not pay:

(1) the cost to repair, replace or restore property damaged or destroyed by extraction of POLLUTANTS;

(2) the cost to extract POLLUTANTS from land or water:

(a) at any location used for the handling, treatment, storage or disposal of waste unless the policy has been specifically extended to cover property at that location;

(b) at any location if the POLLUTANTS are released, dispersed or discharged from a location which is used for the handling, treatment, storage or disposal of waste unless the policy has been specifically extended to cover property at that location;

(c) at any location if the POLLUTANTS arise out of or are a consequence of nuclear reaction or radiation, or radioactive contamination.

The Coinsurance provision, if any, in this policy does not apply to this Extension of Coverage.

3. The following exclusions are added:

Ordinance or Law.

We do not cover loss or damage caused by or resulting from the enforcement of any ordinance or law:

(1)  regulating the use or repair of any property; or

(2)  requiring the tearing down or removal of any property, including the cost of removing its debris.

Pollutants.

We do not cover loss or damage caused by or resulting from the release, discharge or dispersal of POLLUTANTS unless the release, discharge or dispersal is caused by one of the perils listed below applying to the insured property. But we do cover loss caused by any of the following perils which results from the release, discharge or dispersal of POLLUTANTS.

Perils:   Fire or Lightning;
          Explosion;
          Aircraft or Vehicles;
          Windstorm or Hail;
          Riot or Civil Commotion;
          Leakage from Fire Extinguishing
          Equipment;
          Volcanic Action;
          Vandalism or Malicious Mischief;
          Collision, upset or overturn of a
          transporting vehicle.

4.  For the purpose of this Endorsement, POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.


*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.*


Attached to and forming part of policy number: MAX5IM0047308 _____

                    Authorized  Signature: _____

## EQUIPMENT SCHEDULE

| POLICY NUMBER | NAMED INSURED | EFFECTIVE DATE |
|---|---|---|
| MAX5IM0047308 | Texas Transco, Inc. | December 1, 2010 |

This policy insures the equipment as scheduled below:

| Item # | Description and Serial No. of Property Covered | Limit of Insurance |
|---|---|---|
| | | |

We cover property that is described individually on the list:                                              $2,034,000

1. Dated 10/14/2010
2. Signed by us; and
3. On file at:

Alterra Specialty Insurance Company
12222 Merit Drive, Suite 880
Dallas, TX 75251

LOSS PAYABLE:

Item #     Loss Payee (Name and address)

MI0009 (07/08)



**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

# EARTHQUAKE EXCLUSION

The following is added to Paragraph B. EXCLUSIONS 1. :   Contractors Equipment
Broad Form Cause of Loss

d. Earthquake, meaning:

   (1) Any earth movement such as an earthquake, landslide, mud flow, or earth sinking,
      rising or shifting.

      But we will pay for direct loss caused by resulting fire or explosion, if these causes
      of loss would be covered under this form.

   (2) Volcanic eruption, explosion or effusion;

      But we will pay for direct loss caused by resulting fire, if these causes of loss
      would be covered under this form.

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.*

MI0010 (10/10)                                                        Page 1 of 1



THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

# FLOOD EXCLUSION

The following is added to Paragraph B . EXCLUSIONS 1 :   Contractors Equipment
Broad Form Cause of Loss and Well Servicing, Drilling & Workover Equipment Coverage Form

e . Flood, meaning:

Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their
spray all whether driven by wind or not.

But we will pay for direct loss caused by resulting fire, explosion, or theft, if these
causes of loss would be covered under this form.

*THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.*

MI0012 (10/10)                                          Page 1 of 1

IL N 001 09 03

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

© ISO Properties, Inc., 2003

## IMPORTANT NOTICE REGARDING TERRORISM COVERAGE

Insured:Texas Transco, Inc.                    Policy    Number: MAX5IM0047308

Producer:Avreco                                Effective Date: December 1, 2010

You are hereby notified that under the Terrorism Risk Insurance Act of 2002 ("The Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of The Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance coverage you have the right to purchase for losses caused by acts of terrorism, as defined in The Act, is partially reimbursed by the United States under a formula established by The Act.  Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage does not include any charges for the portion of the loss covered by the Federal government under The Act.

Our records indicate that you previously rejected coverage for losses arising out of acts of terrorism, as defined by The Act, when we provided you a quote for insurance.  Accordingly, your policy does not currently provide this coverage.  However, The Act requires that we again make an offer at this time.  If you wish to change your decision and purchase terrorism coverage, you must contact your agent or broker who must request coverage from us so we can provide you with a new quote.  If you do not do so, it will be presumed that you have rejected this offer of terrorism coverage.

This offer of coverage for losses due to terrorist acts, as defined by The Act, if accepted, will be subject to the limit(s), terms and conditions of any policy or endorsement subsequently issued.

If you have any questions about this or any other insurance matter, please contact your agent or broker who can then notify us.

MI0022 (07/08)



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT CLAUSE
## TEXAS

It is agreed that *Alterra Excess & Surplus Insurance Company and the other Insurance Companies named in the Participating Endorsement attached to this policy (herein called the Company)* may be sued on any cause of action arising in this state under any surplus lines insurance contract issued by it pursuant to the procedures provided by this state for unauthorized insurers.

Further, pursuant to any statute of any state, territory or district in the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance).

Service of process in such suit may be made upon the below named secretaries of the company. In any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any appellate court in the event of an appeal.

The below named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

**Name of company:** Alterra Excess & Surplus Insurance Company
**Secretary:** Stephen M. Loderick
**Street Address:** 9020 Stony Point Parkway, Suite 325
**City, State & Zipcode:** Richmond, VA 23235

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.*

MI0032 (10/10)                                                                 Page 1 of 1





| | |
|---|---|
| **IMPORTANT NOTICE - TEXAS** | **AVISO IMPORTANTE - TEXAS** |
| To obtain information or make a complaint: | Para obtener información o para someter una queja: |
| You may contact your agent or you may call Alterra Excess & Surplus Insurance's toll-free number for information or to make a complaint at: | Usted puede comunicarse con su agente o puede llamar al número de teléfona gratis de Alterra Excess & Surplus Insurance para información o para someter una queja al: |

<div align="center">

**IMPORTANT NOTICE - TEXAS**

To obtain information or make a complaint:
You may contact your agent or you may call Alterra Excess & Surplus Insurance's toll-free number for information or to make a complaint at:

**1-800-629-8848**

You may also write to Alterra Excess & Surplus Insurance at:

**Alterra Excess & Surplus Insurance Company**
2711 Buford Road
Box 346
Richmond, VA 23235
E-mail: ombudsman@alterra-us.com

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the **Texas Department of Insurance** at:

P.O. Box 149104
Austin, Texas 78714-9104
1-512-475-1771 (Fax)
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

</div>

**AVISO IMPORTANTE - TEXAS**

Para obtener información o para someter una queja:
Usted puede comunicarse con su agente o puede llamar al número de teléfona gratis de Alterra Excess & Surplus Insurance para información o para someter una queja al:

**1-800-629-8848**

Usted también puede escribir a Alterra Excess & Surplus Insurance:

**Alterra Excess &Surplus Insurance Company**
2711 Buford Road
Box 346
Richmond, VA 23235
E-mail: ombudsman@alterra-us.com

Puede comunicarse con el Departamento de Suguros de Texas para obtener información acerca de compañias, coberturas, derechos or quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, Texas 78714-9104
1-512-475-1771 (Fax)
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero. Si no se resuelve las disputa, puede entonces comunicarse con el Departamento de Seguros de Texas.

**UNA ESTE AVISO A SU POLIZA:**

Este aviso es solo para proposito de información y no se convierte en parte o condición del documento adjunto.

MXM104 (10/10)                    Page 1 of 1



# CONTRACTORS EQUIPMENT COVERAGE DECLARATIONS

Policy Number:  MAX5IM0047308

Policy Period: December 1, 2010     /December 1, 2011
(12:01 A.M. Standard Time at your mailing address shown herein.)

### SCHEDULED CONTRACTORS' EQUIPMENT

Disaster Limit:  $ ___2,034,000___   not to exceed the scheduled value of each item.
Deductible:      $ ___2,500___       per occurrence.
Premium:         $ ___15,052___

### MISCELLANEOUS TOOLS & EQUIPMENT

Maximum Limit:  $ _not covered_   not to exceed $_____per item.
Deductible:     $ _____  per occurrence.
Premium:        $ _____

### CONTRACTORS' EQUIPMENT RENTAL EXPENSE REIMBURSEMENT

Limit of Insurance: $ _not covered_   per day.
Imit of Insurance: $ _____   per occurrence, including in the annual aggregate.
Deductible:         $ _____  per occurrence.
Premium:            $ _____

### LEASED, LOANED OR RENTED EQUIPMENT FROM OTHERS

Limit of Insurance: $ _not covered_   any one item.
Limit of Insurance: $ _____  any one occurrence.
Deductible:         $ _____  per occurrence.
Premium:            $ _____

### Premium

The Total Premium for this Coverage is $ ___15,052___

### Special Conditions:

Blanket coverage for Loss Payees and/or Additional Insureds apply as listed on ACCORD 25-S Certificates of Insurance issued by the Agent/Broker and on file at their location.

Forms and Endorsements forming a part of this Coverage at the time of issue:
 :e Schedule of Forms and Endorsements - MI0005

MI0601 (10/10)

# Contractors' Equipment
# Broad Form Cause of Loss
# (Commercial Inland Marine)

Various Provisions in this Policy restrict coverage. Please read the entire policy carefully to determine rights, duties, and what is and is not insured. Throughout this Policy, the words "you", "your" or "yours" refer to the Named Insured shown in the Declarations. The words "we", "our" or "ours" and "us" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Clause H—Definitions.

## A. COVERAGE
We will pay for direct physical loss or damage to Covered Property from any of the Covered Causes of Loss.

1. COVERED PROPERTY, as used in this Coverage Form means only Contractors' Equipment that:
   a. You own as scheduled; and
   b. Similar property in your care, custody or control, as scheduled.

2. PROPERTY NOT COVERED
   Covered Property does not include:
   a. Any property while leased, loaned, or rented to others, or possession of which has been transferred to others by any form of agreement of sale;
   b. Blue prints, plans, drawings, designs, tracings or specifications;
   c. Property which has or is intended to become a permanent part of any structure
   d. Automobiles, trucks or similar conveyances which are both licensed and designed for highway use;
   e. Aircraft, watercraft, including property installed in or on any aircraft or watercraft;
   f. Covered Property while waterborne, or on a waterborne conveyance;
   g. Any equipment while located or being used underground.
   h. Contraband, or property in the course of illegal transportation or trade.

3. COVERED CAUSES OF LOSS
   Covered Causes of Loss means risks of direct physical loss to Covered Property except those causes of loss listed in the Exclusions.

## B. EXCLUSIONS
1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.
   a. GOVERNMENTAL ACTION
      Seizure or destruction of Property by order of governmental authority; We will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.
   b. NUCLEAR HAZARD
      Any weapon employing atomic fission or fusion; or Nuclear reaction or radiation, or radioactive contamination from any other cause; We will pay for direct loss or damage caused by resulting fire if the fire would be covered under this Policy.

   c. WAR AND MILITARY ACTION
   War, including undeclared or civil war; Warlike action by a military
   force, including action in hindering or defending against an actual or
   expected attack, by a government, sovereign or the authority using
   military personnel or other agents; or Insurrection, rebellion, revolution,
   usurped power or action take by a governmental authority in hindering
   or defending against any of these.

2. We will not pay for loss or damage caused by or resulting from any of the
   following:
   a. Weight of a load exceeding the lifting capacity of any machine under the
      "operating conditions" at the time of loss;
   b. Dishonest or criminal acts:
      a. By you, or by any of your employees;
      b. By anyone authorized to act for you;
      c. By anyone to whom the property is entrusted;
      All whether alone or in collusion with others and whether during hours
      or employment or not; this Exclusion does not apply to a carrier for hire.
   c. delay, loss of market, loss of use, interruption of business, consequential
      loss of any nature;
   d. artificially generated current creating a short circuit or other electrical
      disturbance; we will pay for direct physical loss or damage caused by a
      resulting fire or explosion if these causes of loss would be covered under
      this Coverage Form;
   e. unauthorized instruction to transfer property to any person or to any
      place.

3. We will not pay for loss or damage caused by any of the following. If loss or
   damage by a Covered Cause of Loss results, we will pay for that resulting loss or
   damage.
   a. wear and tear;
   b. hidden or latent defect, or any quality in property that causes it to
      damage or destroy itself, gradual deterioration;
   c. insects, vermin, rodents;
   d. dryness or dampness of atmosphere, extremes of temperature, corrosion
      or rust, mold, rot, cold and heat;
   e. Mechanical breakdown; rupture or bursting caused by centrifugal force;
   f. Explosion, rupture or bursting of steam boilers, steam pipes, steam
      turbines or steam engines; this exclusion applies only to loss or damage
      to the boiler, pipe, turbine or engine in which the loss or damage
      occurred.

## C. LIMIT OF INSURANCE
The most we will pay for direct physical loss or damage in any one occurrence is the
amount shown as the Disaster Limit on the Contractors' Equipment Declarations.

## D. DEDUCTIBLE
We will not pay for loss or damage in any one occurrence until the amount of the
adjusted loss or damage exceeds the applicable Deductible amount shown on the

Declarations for Contractors' Equipment. We will then pay the Amount of adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

E. **PREMIUM**
The Premium for this Coverage shall be the amount specified in the Declarations for Contractors' Equipment.

F. **COVERAGE EXTENSIONS**
　1. Equipment Leased or Rented From Others
　　If a limit of insurance is shown for this coverage on the Contractors' Equipment Declarations, we will pay for direct physical loss or damage to Contractors' Equipment that you lease, loan, or rent from others. The most we will pay for any one piece of equipment or in any one loss is the amount shown on the Contractors' Equipment Declarations for Your Equipment Leased, Loaned, or Rented From Others.

　2. Contractors' Rental Expense Insurance
　　If a limit of insurance is shown for this coverage on the Contractors' Equipment Declaration, we will pay for the necessary "Rental Expense" which you incur in order to continue, as nearly as possible, the normal operation of your business, following the direct physical loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss. We will not pay for "Rental Expense" or any period of suspension of use during which the Covered Property not have been used or would not be required to be used. In no event shall we pay for a loss of profits or earnings resulting from direct physical loss or damage to Covered Property or for a reduced volume of business.

　3. Debris Removal
　　a. We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of;
　　　a. The date of direct physical loss of damage; or
　　　b. The end of the policy period.
　　b. We will pay up to $25,000 for debris removal expense in any one occurrence.
　　c. This coverage extension for debris removal does not apply to costs to:
　　　a. Extract "pollutants" from land or water; or
　　　b. Remove, restore, or replace polluted land or water.

G. **ADDITIONAL CONDITIONS**
The following conditions apply in addition to the Commercial Inland Marine Conditions and Common Policy Conditions:
　1. COVERAGE TERRITORY
　　We cover property wherever located within the United States of America, the District of Columbia and Canada.

　2. COINSURANCE
　　All covered property must be insured for at least 80% of its total value as of the time of "loss" or you will incur a penalty.



The penalty is that we will pay only the proportion of any "loss" that the Limit of Insurance shown in this Coverage Form Declarations for a scheduled item bears to 80% of its actual cash value at the time of "loss".

When unscheduled equipment Limits of Insurance are shown in the Coverage Form Declarations, the penalty is that we will pay only the proportion of any "loss" that the Limit of Insurance bears to 80% of the actual cash value of all such property at the time of "loss".

3. NEWLY ACQUIRED PROPERTY

If during the policy period you acquire additional property similar to that already covered by this form, we will cover such property for up to 30 days. The most we will pay in a loss is the amount shown in the Declarations.

You will report such property within 30 days from the date acquired and will pay any additional premium due. If you do not report such property, coverage will cease automatically 30 days after the date the property is acquired or at the end of the policy period, whichever occurs first.

## H. DEFINITIONS

1. "Theft" means the taking of Covered Property by stealth or the loss of damage of the Covered Property under circumstances where the probability of theft exists. "Theft" does not mean mysterious or unexplained disappearance of property.
2. "Operating Conditions" means weather conditions, ground conditions or conditions in the manufacturer's load chart specifications.
3. "Rental Expense" means the expense incurred by you to rent, lease, or hire comparable substitute Covered Property, during the period of suspension of use during which you are prevented form using Covered Property as a result of direct physical loss or damage by a Covered Cause of Loss;
   a. On work in progress at the time of the direct physical loss or damage by a Covered Cause of Loss; or
   b. On future work for which you, at the time of the direct physical loss or damage by a Covered Cause of Loss, hold a valid written contract that would require the use of the Covered Property.



# MOTOR TRUCK CARGO LEGAL LIABILITY DECLARATIONS

Policy Period: December 1, 2010      / December 1, 2011      Policy Number:  MAX5IM0047308
(12:01 A.M. Standard Time at your mailing address shown herein.)

## DESCRIPTION OF COVERED PROPERTY
Brine water
Drilling mud

## LIMITS OF INSURANCE

Property in or on any one automobile, truck, trailer, or combination of these operated by one power unit:
$_____30,000_____ per truck

We cover property only while located at the following described terminals (whether on or off vehicles):
1._____
2._____
3._____

All Covered Property in any one Occurrence: $_____60,000_____

## DEDUCTIBLE:

$_____1,000_____per occurrence.

## PREMIUM:

The total deposit premium for this Coverage is $_____17,000_____, and is subject to a minimum premium of $17,000.

## RATE                                                REPORTING/ADJUSTMENT PERIOD

$0.05_____ per $100.          __Annually_____ reporting
                                     __Annually_____ adjustment

## PREMIUM BASE
The total gross receipts, whether collected or uncollected, reported at expiration under this policy (estimated @ $34,000,000)

## SPECIAL CONDITIONS:

ICC Filings issued        __no_____
State Filing(s) issued    __no_____, if yes, list States: _____

Forms and Endorsements forming a part of this Coverage at the time of issue:  See Schedule of Forms and Endorsements – MI0005

MI1301 (10/10)



# MOTOR TRUCK CARGO LEGAL LIABILITY
## (Commercial Inland Marine)

Various Provisions in this Policy restrict coverage. Please read the entire policy carefully to determine rights, duties, and what is and is not insured. Throughout this Policy, the words "you", "your" or "yours" refer to the Named Insured shown in the Declarations. The words "we", "our" or "ours" and "us" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Clause H—Definitions.

### A. COVERAGE
We cover YOUR LIABILITY as a motor carrier for direct physical loss or damage to Covered Property from any of the Covered Causes of Loss.

   1. COVERED PROPERTY, as used in this Coverage Form means property of others, as described in the declarations, for which you have accepted for transportation as a motor carrier under contract, tariff and bill of lading, or shipping receipt.

   2. WHEN COVERAGE APPLIES
   We cover property while:
      a. It is in your care, custody and control; or
      b. It is in the custody of connecting carriers.

   3. PROPERTY NOT COVERED
   Covered Property does not include:
      a. Blue prints, plans, drawings, designs, tracings or specifications;
      b. Accounts, bills, currency, deeds, money, notes, securities and evidences of debt;
      c. Jewelry, costume jewelry, precious or semi-precious stones, gold, silver platinum or other precious metals or alloys, bullion, furs, garments trimmed with fur, paintings, statuary or other works of art;
      d. Eggs, live animals or birds;
      e. Baled cotton which was ginned within 72 hours before you accepted it for transportation;
      f. Property at terminals, warehouses, garages, spotting areas, transfer points or other similar places of storage or deposit unless such places are listed as terminals in the declarations. If such places are listed as terminals in the declarations, we will cover property for a period not exceeding 72 hours (excluding Sundays and holidays);
      g. Intermodal containers, unless included in the value of the shipment;
      h. Contraband, or property in the course of illegal transportation or trade.

   4. COVERED CAUSES OF LOSS
   Covered Causes of Loss means risks of direct physical loss to Covered Property except those causes of loss listed in the Exclusions.

### B. EXCLUSIONS
   1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

a. GOVERNMENTAL ACTION

Seizure or destruction of Property by order of governmental authority; We will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

b. NUCLEAR HAZARD

Any weapon employing atomic fission or fusion; or Nuclear reaction or radiation, or radioactive contamination from any other cause; We will pay for direct loss or damage caused by resulting fire if the fire would be covered under this Policy.

c. WAR AND MILITARY ACTION

War, including undeclared or civil war; Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by a government, sovereign or the authority using military personnel or other agents; or Insurrection, rebellion, revolution, usurped power or action take by a governmental authority in hindering or defending against any of these.

2. We will not cover your liability for loss caused by or resulting from any of the following:

a. Dishonest or criminal acts:
   a. By you, or by any of your employees;
   b. By anyone authorized to act for you;
   c. By anyone to whom the property is entrusted;
   All whether alone or in collusion with others and whether during hours or employment or not; this Exclusion does not apply to a carrier for hire.

b. Delay, loss of market, loss of use, interruption of business, consequential loss of any nature;

c. Artificially generated current creating a short circuit or other electrical disturbance.
   But we will pay for direct physical loss or damage caused by a resulting fire or explosion if these causes of loss would be covered under this Coverage Form;

d. Mechanical breakdown, failure, improper operation or destruction of heating, refrigeration or cooling machinery or equipment.
   But we will cover your liability for such loss if caused directly by fire, lightning, explosion, windstorm, flood, earthquake, vandalism, aircraft, rioters, strikers, theft or attempted theft, or by "accident" to the vehicle carrying the property if these causes of loss would be covered under this form.

e. Mechanical or electrical malfunction or derangement.
   But we will cover your liability for such loss if caused directly by fire, lightning, explosion, windstorm, flood, earthquake, vandalism, aircraft, rioters, strikers, theft or attempted theft, or by "accident" to the vehicle carrying the property if these causes of loss would be covered under this form.

f. Breakage, marring denting, scratching, bending, twisting, exposure to light, leakage, evaporation, shrinkage, loss of weight, contamination, any change in appearance, smell texture or taste, rusting, oxidation, discoloration, corrosion, dampness, cold or heat.
   But we will cover your liability for such loss if caused during loading or unloading or if caused directly by fire, lightning, explosion, windstorm,

MI1302 (10/10)                                                                 Page 2 of 4

flood, earthquake, vandalism, aircraft, rioters, strikers, theft or attempted theft, or by "accident" to the vehicle carrying the property if these causes of loss would be covered under this form.

g. Unauthorized instruction to transfer property to any person or to any place.

h. Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense;

3. We will not cover your liability for a loss caused by or resulting from any of the following. But if a loss by a Covered Cause of loss results, we will cover your liability for that resulting loss.

a. Wear and tear; hidden or latent defect, or any quality in property that causes it to damage or destroy itself, gradual deterioration;

b. Insects, vermin, rodents;

c. The unlawful sale or disposal of Covered Property;

4. We will not pay any costs or penalties you incur for your violation of any law or regulation that applies to your delay in payment, denial or settlement of any claim made against you by others for loss to Covered Property.

## C.  LIMIT OF INSURANCE

The most we will pay for direct physical loss or damage in any one occurrence is the amount shown in the Declarations.

## D.  DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage exceeds the applicable Deductible amount shown on the Declarations for Motor Truck Cargo Legal Liability. We will then pay the Amount of adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

## E.  PREMIUM

The Premium for this Coverage shall be the amount specified in the Declarations for Motor Truck Cargo Legal Liability.

## F.  COVERAGE EXTENSIONS

1. Debris Removal

a. We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss under this form that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of;

a. The date of direct physical loss of damage; or

b. The end of the policy period.

b. We will pay the least of the following amounts for debris removal expense in any one occurrence:

a. 25% of the gross physical loss or damage (before the applicable deductible is taken); or

b. $5,000.

c. This coverage extension for debris removal does not apply to costs to:

a. Extract "pollutants" from land or water; or

          b.  Prevent, control, repair, clean up, remove, restore or replace polluted land or water.

2.  Earned Freight

a. In the event of "loss" to covered property, we will pay your earned freight charges not collected from others. The inclusion of freight charges in any payment we make to a shipper, consignee or other party shall relieve us from any responsibility for payment of those charges to you. The most we will pay for earned freight in any one occurrence is $2,500.

## G.  ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and Common Policy Conditions:

1.  COVERAGE TERRITORY

We cover property wherever located within the United States of America, the District of Columbia and Canada.

2.  VALUATION

General Condition E. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

The value of property will be the least of the following:

1.  the cost to reasonably restore that property to its condition immediately before loss;
2.  the cost of replacing that property with substantially identical property;
3.  the value, if any, stated in the bill of lading or shipping receipt; or
4.  the limitation stated in the tariff.

In the event of loss, the value of property will be determined as of the time of loss.

## H.  DEFINITIONS

"Loss" means accidental loss or damage.

"Accident" means "collision", upset or overturn of the transporting vehicle. "Collision" means the violent and accidental contact of the transporting vehicle with another vehicle or object, but not including:

1.  The road bed or curbing;
2.  Rails or ties of street, steam or electric railroads;
3.  Any stationary object while backing for loading or unloading purposes.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TARPAULIN WARRANTY

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

Motor Truck Cargo Legal Liability Coverage

The following is added to section B.2. Exclusions:

i.     Hail, rain, sleet or snow, whether driven by wind or not, to property on flatbed truck or trailer unless the property is completely and securely covered by waterproof tarpaulin.

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.*





# WELL SERVICING, DRILLING AND WORKOVER EQUIPMENT DECLARATIONS

Policy Number:MAX5IM0047308

Policy Period: December 1, 2010      / December 1, 2011
12:01 A.M. Standard Time at your mailing address shown hereon.

## LIMITS OF INSURANCE

**We cover only the following Property:**
Emsco G-45 Drilling Rig

**Limit of Insurance**

**ALL COVERED PROPERTY IN ANY ONE OCCURRENCE:**                    $    2,798,700

## PREMIUM:

The Premium for this Coverage is $         16,792

## COINSURANCE:

The Coinsurance is  80%      .

## DEDUCTIBLE:

The Deductible is $     150,000        .

## LOSS PAYABLE:

Loss, if any, will be adjusted only with you and shall be payable to you and the following as their respective interests may appear, subject, however, to all the provisions and stipulations of this policy.

Loss Payees, As Their Interest May Appear:
1.

## SPECIAL PROVISIONS (IF ANY):
Coverage only applies while the rig is stacked at 13841 N Hwy 171, Cresson, TX 78035.
There is no coverage while the rig is operating.

MI1501 (10/10)



# WELL SERVICING, DRILLING AND WORKOVER EQUIPMENT COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. - DEFINITIONS.

## A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

**1. COVERED PROPERTY,** as used in this Form, means:

   a.   Your property consisting of Oil, Gas, Water Well Servicing, Drilling and/or Workover Equipment, as scheduled;

   b.   Machinery, tools, appurtenances, derricks, sub-structures, provided the value is included in the schedule;

   c.   Similar property of others in your care, custody or control, as scheduled.

**2. PROPERTY NOT COVERED**

Covered Property does not include:

   a.   Motor vehicles or trailers designed for highway use, unless forming a part of scheduled property;

   b.   Property on drilling barges or drilling vessels;

   c.   Property during any ocean, coastal or air shipment;

   d.   Property being operated by persons other than you or your employees.
But we will cover such property being operated by the well owner or operator as required in the drilling contract.

   e.   Blueprints, plans, records, specifications;

   f.   Personal effects of employees or others;

   g.   Wells whether or not being drilled;

   h.   Water, oil and/or gas;

   i.   Mud, drilling compound, chemicals, cement;

   j.   Casings, drill bits, roadways, causeways or earthen pits;

   k.   Insured property while located underground.

       But we will pay for "loss" to such property caused directly by fire, lightning or explosion above the surface of the ground, windstorm, theft, tidal wave, flood, riot, strikes, malicious damage, "blowout," "cratering."

   l.   Property used to drill a relief well to control fire, "blowout" or  "cratering" unless you give us notice in writing in advance of such use and pay us additional premium.

    m.   Drill stem left in the well and through which an oil, gas and/or water well is completed.

    n.   Foam solution or other fire extinguishing materials lost, expended or destroyed in fighting fire, "blowout" or "cratering." We will not pay any expense incident to fighting fire or controlling or attempting to control "blowout" or "cratering."

    o.   Contraband, or property in the course of illegal transportation or trade.

3.   COVERED CAUSES OF LOSS

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" to Covered Property except those causes of "loss" listed in the Exclusions.

B. EXCLUSIONS

1.   We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

a.   EARTHQUAKE, meaning:

(1) Any earth movement such as an earthquake, landslide, mudflow, or earth  sinking, rising or shifting;

(2) Volcanic eruption, explosion or effusion.

b. GOVERNMENTAL ACTION

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Form.

c.   NUCLEAR HAZARD

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any  other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Form.

d.   WAR AND MILITARY ACTION

(1) War, including undeclared or civil war.

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2.  We will not pay for a "loss" caused by or resulting from any of the following:

a.   Delay, loss of use or loss of market; cessation of work.

b.   Consequential "loss" of any kind.

c.   Dishonest acts by:

(1) You, your employees or authorized representatives;

(2) Anyone else with an interest in the property, or their employees or authorized representatives; or

(3) Anyone else to whom you entrust the property.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.  But this exclusion does not apply to Covered Property that has been entrusted to others who are carriers for hire.

d. Artificially generated current creating a short circuit or other electrical disturbance within an article covered under this Form.

But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Form.

This exclusion only applies to "loss" to that article in which the disturbance occurs.

e. Explosion, rupture or bursting of boilers, economizers or other vessels, machinery or apparatus including their connections in which pressure is used, internal combustion engines, flywheels, pulleys, abrasive wheels or moving or rotating parts of machines.

But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Form.

f. voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g. Unauthorized instruction to transfer property to any person or to any place.

3. We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

a. Wear and tear, any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration;

b. Insects, vermin or rodents; mechanical breakdown; corrosion, rust, dampness, cold or heat, expansion or contraction caused by changes in temperature;

c. Faulty design, faulty materials, faulty workmanship.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. DEDUCTIBLE

We will not pay for "loss" in any one occurrence until the amount of the adjusted "loss" before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

### 1. COVERAGE TERRITORY

We cover property wherever located within:

a. The United States of America;

b. Puerto Rico; and

c. Canada.

### 2. COINSURANCE

All Covered Property must be insured for at least the percentage of its total value shown in the Declarations as of the time of "loss" or you will incur a penalty.

The penalty is that we will pay only the proportion of any "loss" to any item that the Limit of Insurance shown in the schedule bears to that percentage of the value of the item as of the time of "loss."

3. "BLOWOUT" PREVENTER

You agree to install a "blowout" preventer of standard make on the surface casing. It will be installed and tested in accordance with the usual practice.

This does not apply:

    a. in areas where it is not customary to use "blowout" preventers, or

    b. to cable tool rigs and spudders.

4. DRILLING WITH GAS, AIR OR OIL

We give you permission to use natural gas, air and/or oil as a circulating medium, subject to the following:

    a. Crews must have specialized training in air, gas and/or controlled pressure drilling operations.

    b. An approved "blowout" preventer rotating stripper system will be used. This system will include a minimum of a double gate ram type "blowout" preventer and a rotating drilling head. The rig will be equipped with a kelly cock which will be worked each trip out of the hole.

    c. The rotating "blowout" preventer will be lubricated and inspected in accordance with the manufacturer's recommendations.

    d. The ram type "blowout" preventers will be opened and closed once daily or each trip out of the hole. The blowout preventer stacked will be tested once weekly to 50% of rated working pressure.

    e. The ram type "blowout" preventers will be equipped with adequate external controls from the time they are nippled until they are removed.

    f. A vaporproof electric wiring system will be used and will be maintained in good operation condition.

    g. Flow lines expelling air, or gas will be an adequate distance from rig.

    h. Engine exhausts will be equipped with an approved spark arrester or will be injected with water.

    i. Rig will be equipped with adequate fire control appliances including minimum of six (6) hand type fire extinguishers with minimum U.L. Rating of 16 B.C.

    j. No open fires of any type will be allowed.

    k. No Smoking or Caution signs will be conspicuously posted on all sides of rig and will be observed by all parties on the wellsite.

5. IN HOLE SALVAGE EXPENSES

We will pay salvage expenses incurred as a result of a "loss" that we insure under this Form.

We will pay only the proportion of the salvage expenses that the value of the drill stem below the surface of the ground at the time of "loss" bears to:

    a. the total cost of the hole at the time of "loss," plus

    b. the value of the drill stem.

The most we will pay in any one "loss," including salvage expenses, is the value of the drill stem below the surface of the ground at the time of "loss."

6. ADDITIONAL ACQUIRED PROPERTY

If during the policy period you acquire additional property similar to that already covered by this Form, we will cover such property for up to 30 days. The most we will pay in a "loss" is the amount shown in the Declarations.

You will report such property within 30 days from the date acquired and will pay any additional premium due. If you do not report such property, coverage will cease automatically 30 days after the date the property is acquired or at the end of the policy period, whichever occurs first.

MI1502 (10/10)

## 7. REINSTATEMENT OF LIMIT AFTER LOSS

Loss Condition J. Reinstatement of Limit After Loss in the Commercial Inland Marine Conditions is replaced by the following:

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item.

## F. DEFINITIONS

"Blowout" means a sudden and continuous explosion, from the well to the atmosphere, of drilling fluid followed by a continuous and uncontrolled flow of gas and/or oil and/or water from the well to the surface due to encountering subterranean pressures and resulting in the well getting completely out of control.

"Cratering" means a basinlike opening in the earth's surface surrounding a well caused by the erosive and eruption action of gas and/or oil and/or water flowing without restriction.

"Loss" means accidental loss or damage.



# COMMERCIAL PROPERTY COVERAGE DECLARATIONS

**Policy Number:** MAX5IM0047308

**Policy Period:** December 1, 2010 **to**          December 1, 2011
(12:01 A.M. Standard Time at your mailing address shown herein.)

**Insured Name:**    Texas Transco, Inc.

**COVERAGE PART(S):**   Building and Personal Property

**LIMIT(S) OF INSURANCE:**  Per the Schedule of Locations

**COVERED CAUSES OF LOSS:**  Cause of Loss Special Form as per CP 1030 (06/07)

**DEDUCTIBLE:**       1,000

**VALUATION:**    Replacement Cost

**COINSURANCE:** 80%

**COVERAGE PREMIUM:**       $2,673      Rate is $0.74 per $100 of TIV

**SPECIAL CONDITIONS:**

Blanket coverage for Loss Payees and/or Additional Insureds apply as listed on ACCORD 25-S Certificates of Insurance issued by the Agent/Broker and on file at their location.

Forms and Endorsements forming a part of this Coverage at the time of issue:
See Schedule of Forms and Endorsements - MI0005

MI1601 (10/10)

# COMMERCIAL PROPERTY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## 1. Broker of Record:

The producer shown in the Declarations is the exclusive broker of record and agent of the insured for all transactions during the policy period. Any changes, including money transactions, additional premiums, return premiums and cancellations must be made through the named producer. The Company will not accept a request for change in producer mid term. The Insured may change brokers as respects to this policy at anniversary by providing the Company five (5) days written notice requesting such change. Additionally, the Company will only agree to the Insured's change request if the indicated change broker is an active broker under contract with the Company and Alterra Excess & Surplus Insurance Company.

## 2. Changes:

This policy contains all the agreements between the Company and the Insured concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the Company's consent. This policy's terms can be amended or waived only by endorsement issued by the Company and made a part of this policy.

## 3. Concealment, Misrepresentation or Fraud:

This Coverage Part is void in any case of fraud by the Insured as it relates to this Coverage Part at any time. It is also void if the named insured or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

      A. This Coverage Part;
      B. The Covered Property;
      C. The Insured's interest in the Covered Property; or
      D. A claim under this Coverage Part.

## 4. Control of Property:

Any act or neglect of any person other than the Insured beyond the Insured's direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## 5. Coverage Territory:

Under this Coverage Part the coverage territory is:

      A. The United States of America.

      B. Puerto Rico and Canada are excluded from coverage territory.

## 6. Examination of Your Books and Records:

The Company may examine and audit the Insured's books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## COMMERCIAL PROPERTY CONDITIONS

**7. Government Activity Clause:**

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

**8. Inspections and Surveys:**

    A. The Company has the right to:
        1. Make inspections and surveys at any time.
        2. Give the Insured reports on the conditions the Company finds; and
        3. Recommend changes.

    B. The Company is not obligated to make any inspections, surveys, reports or recommendations and any such actions undertaken relate only to insurability and the premiums to be charged. The Company does not make safety inspections. The Company does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And the Company does not warrant that conditions:

        1. Are safe or healthful; or
        2. Comply with laws, regulations, codes or standards.

    C. Paragraphs A. and B. of this condition apply not only to the Company, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

    D. Paragraph B. of this condition does not apply to any inspections, surveys, reports or recommendations the Company may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**9. Legal Action Against Us:**

No one may bring a legal action against the Company under this Coverage Part unless:

    A. There has been full compliance with all of the terms of this Coverage Part and Policy Conditions; and

    B. The action is brought within 1 year after the date on which the direct physical loss or damage occurred.

**10. No Benefit to Bailee:**

No person or organization, other than the Insured, having custody of Covered Property will benefit from this insurance.

## COMMERCIAL PROPERTY CONDITIONS

**11. Notification of Claim:**

The Insured, upon knowledge of any occurrence likely to give rise to claim for loss or damage as covered hereunder, shall notify the Company as soon as practicable but no later than 1 year from Policy expiration. Claim Reporting information is as follows:

>       Phone: 1 - (888) - 629 - 8848
>       FAX: 1- (888) - 629 - 8858
>       E-mail: claims@alterra-us.com

Additionally, the Insured shall be required to submit an acceptable sworn Proof of Loss within 60 days from date of written notice to the Company, unless extended in writing by the Company.

**12. Nuclear Exclusion:**

(This clause applied to all perils except fire and lightning, which perils are otherwise provided for in the Nuclear Clause attached to the Policy): Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, is not insured against by this Policy, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to or aggravated by any of the perils insured against in this Policy.

**13. Other Insurance:**

>   A. The Insured may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If the Insured does, the Company will pay their share of the covered loss or damage. The Company's share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
>
>   B. If there is other insurance covering the same loss or damage, other than that described in above, the Company will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether the Insured can collect on it or not. But the Company will not pay more than the applicable Limit of Insurance.

**14. Premiums:**

The first Named Insured shown in the Declarations:

>   A. Is responsible for the payment of all premiums; and
>   B. Will be the payee for any return premiums the Company pays.

**15. Preservation of Property:**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, the Company will pay for any direct physical loss or damage to that property:

>   A. While it is being moved or while temporarily stored at another location; and
>   B. Only if the loss or damage occurs within 30 days after the property is first moved.

## COMMERCIAL PROPERTY CONDITIONS

**16. Service of Suit:**

It is agreed that in the event of the failure of this Company hereon to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction with the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company Presidents, or their nominees. In any suit against any one of them upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Company Presidents, or their nominees are authorized and directed to accept service of process on behalf of the Companies in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**17. Transfer of Your Rights and Duties Under This Policy:**

The Insured's rights and duties under this policy may not be transferred without the Company's written consent except in the case of death of an individual Named Insured.

If the Insured dies, the Insured's rights and duties will be transferred to the Insured's legal representative but only while acting within the scope of duties as the Insured's legal representative. Until the Insured's legal representative is appointed, anyone that has proper temporary custody of the Insured's property will have the Insured's rights and duties but only with respect to that property.

**18. Transfer of Rights of Recovery Against Others To Us:**

If any person or organization to or for whom the Company makes payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

    A. Prior to a loss to the Insured's Covered Property or Covered Income.
    B. After a loss to the Insured's Covered Property or Covered Income only if, at time of loss, that party is one of the following:

        1. Someone insured by this insurance;
        2. A business firm:
           (a) Owned or controlled by the Insured; or
           (b) That owns or controls the Insured; or
        3. The Insured's tenant.

This will not restrict the Insured's insurance.

## COMMERCIAL PROPERTY CONDITIONS

**19. War Risk Exclusion:**

This Company shall not be liable for loss caused directly or indirectly by (a) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack, (1) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (2) by military, naval or air forces; or (3) by an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such hostile or warlike action by such a government, power, authority or forces; (b) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABSOLUTE POLLUTANT AND ASBESTOS EXCLUSIONS

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 0010**

Part A, 4. d. COVERAGE, Additional Coverages, Pollutant Cleanup or Removal is deleted from the policy.

The following exclusions are added to the policy:

Absolute Pollutant Exclusion

This policy does not apply to any loss, direct physical loss or damage, demand, claim, occurrence, expense or suit arising out of or in any way related to pollution including any cost or expense arising out of or in any way related to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing pollution. The company shall have no duty of any kind with respect to any such loss, direct physical loss or damage, demand, claim, occurrence, expense or suit.  This exclusion applies to all coverages under this policy.

Part H, 1. DEFINITIONS, "Pollutants" is deleted and replaced by the following:

As used in this exclusion "pollution" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

Absolute Asbestos Exclusion

This policy does not apply to any loss, demand, claim, occurrence, direct physical loss or damage, suit or expense arising out of or related in any way to asbestos or asbestos containing material or material that is alleged to have contained asbestos.  The company shall have no duty of any kind with respect to any such loss, demand, claim, occurrence, direct physical loss or damage, expense or suit.  This exclusion applies to all coverages under this policy.

*ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.*

Location Schedule

Coverage provided by the Manuscript coverage parts applies only to the
"covered locations" described below.

| Loc. No. | Covered Locations | Covered Property/ Coverage Provided | Limits |
|---|---|---|---|
| 1B1 | N. White Oak Rd & Hwy 2275 White Oak, TX 75893 | Building | $40,000 |
| 2B1 | 13841 N Hwy 171 Cresson, TX 78035 | Building Contents EDP | $207,952 $150,000 $140,000 |
| 2B2 | 13841 N Hwy 171 Cresson, TX 78035 | Building Contents | $121,743 $25,000 |
| 2B3 | 13841 N Hwy 171 Cresson, TX 78035 | Building Contents | $45,419 $10,000 |
| 3B1 | 120 Bailey Street Searcy, AR 72143 | Contents Inventory Fuel Tank | $20,000 $50,000 $40,000 |
| 4B1 | 13985-B Hwy 85 Bee Branch, AR 72013 | Fuel Tank | $40,000 |
| 5B1 | 113 Main St Ulster, PA 18850 | Contents | $50,000 |
| 6B1 | RR 2 Box 9A-1 Ulster, PA 18850 | Inventory | $50,000 |

MI1613 (07/08)

COMMERCIAL PROPERTY
CP 00 10 06 07

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section H., Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Part, means the type of property described in this section, A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

   a. **Building,** meaning the building or structure described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery and

         (b) Equipment;

      (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

         (a) Fire-extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

      (5) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to the building or structure;

         (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

   b. **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation Of Coverage form:

      (1) Furniture and fixtures;

      (2) Machinery and equipment;

      (3) "Stock";

      (4) All other personal property owned by you and used in your business;

      (5) Labor, materials or services furnished or arranged by you on personal property of others;

      (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

      (7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

© ISO Properties, Inc., 2007

   c.  **Personal Property Of Others** that is:

     (1)  In your care, custody or control; and

     (2)  Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

    However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2.  **Property Not Covered**

   Covered Property does not include:

   a.  Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

   b.  Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

   c.  Automobiles held for sale;

   d.  Bridges, roadways, walks, patios or other paved surfaces;

   e.  Contraband, or property in the course of illegal transportation or trade;

   f.  The cost of excavations, grading, backfilling or filling;

   g.  Foundations of buildings, structures, machinery or boilers if their foundations are below:

     (1)  The lowest basement floor; or

     (2)  The surface of the ground, if there is no basement;

   h.  Land (including land on which the property is located), water, growing crops or lawns;

   i.  Personal property while airborne or waterborne;

   j.  Bulkheads, pilings, piers, wharves or docks;

   k.  Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

   l.  Retaining walls that are not part of a building;

  m.  Underground pipes, flues or drains;

n.  Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, n., does not apply to your "stock" of prepackaged software;

o.  The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

p.  Vehicles or self-propelled machines (including aircraft or watercraft) that:

   (1)  Are licensed for use on public roads; or

   (2)  Are operated principally away from the described premises.

   This paragraph does not apply to:

    (a)  Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

    (b)  Vehicles or self-propelled machines, other than autos, you hold for sale;

    (c)  Rowboats or canoes out of water at the described premises; or

    (d)  Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers;

© ISO Properties, Inc., 2007